[No. 17167.  Department One.  January 19, 1923.]

JOSEPH GALBRAITH *et al., Respondents,* v. WHEELER-
OSGOOD COMPANY, *Appellant.*[1]

NEGLIGENCE (3)—ABATEMENT OF NUISANCE—LIABILITY—STATUTES.
Rem. Comp. Stat., § 5804, relating to public nuisances though leaving
inflammable debris on cut-over land or slashings, does not take from
the owner the responsibility for abatement; but, upon notice from
the state forester, he may abate it or may refuse or fail to do so and
let the state forester abate it; hence, where the owner authorized
the forester to act for him at his expense, he is liable for the negli-
gent acts of local fire wardens employed by the state forester to burn
the debris, since they were acting in an individual and not official
capacity.

SAME (3, 38)—FIRES—PROXIMATE OR INTERVENING CAUSE—EVI-
DENCE—SUFFICIENCY.  Whether a high wind was the proximate cause
of the spreading of a fire is a question for the jury where there was
evidence that the parties employed to burn debris did not exercise
such care and prudence as an ordinarily prudent person would under
like circumstances.

Appeal from a judgment of the superior court for
Whatcom county, Hardin, J., entered October 22, 1921,
upon the verdict of a jury rendered in favor of the
plaintiffs, in an action for damages to timber de-
stroyed by fire.  Affirmed.

*Grosscup & Morrow* and *Chas. A. Wallace,* for
appellant.

*Sather & Livesey,* for respondents.

FULLERTON, J.—In this action the respondents, Gal-
braith, recovered against the appellant, Wheeler-
Osgood Company, for the value of certain standing
timber which was destroyed by fire.

The facts giving rise to the controversy are in sub-
stance these:  The respondents own an 80-acre tract
of land situated in Whatcom county.  The appellant

[1]Reported in 212 Pac. 174.

owns land abutting upon the east and south thereof. Prior to the year 1916, the lands were covered with timber. In that year the appellant caused its lands to be logged by the George Moore Logging Company. The logging company left the land covered with inflammable debris, consisting of tree tops, brush, dead snags, moss, and like wood products. Some of the tree tops and brush were left lying across the line of the appellant's property into the timber of the respondents. In the spring of 1918, the state forester was notified of the condition of the land, and of the fact that the debris thereon constituted a dangerous fire hazard, and on April 1, 1918, sent a written notice to the George Moore Logging Company, calling attention to the condition of the land, the fact that it constituted a dangerous fire hazard, and urging that immediate steps be taken to minimize or abate the same. The George Moore Logging Company forwarded the notice to the appellant. On receipt of the notice, the appellant wrote the forester as follows:

"We are in receipt of your notice of April 1st to the George Moore Logging Company, Vancouver, B. C., in reference to the West ½ and North ½ of Southeast ¼, Section 19, Township 37, Range 5.

"May we ask you kindly to give us a little more detail as to what is necessary on this land and what procedure we shall take. We are not now operating in there, the Moore Logging Company having gone out of business. The title to the land remains in the hands of the Wheeler-Osgood Company. What land does it endanger and what is the condition as reported to you?

"If this work is done by the state forester, what will be its cost, etc.? A little friendly enlightenment upon this subject would be very greatly appreciated."

To this letter the forester answered:

"I am in receipt of your letter of the 15th inst., and note fully your statement concerning the land which

was reported to this office as being a dangerous fire hazard.

"In explanation of this I will state that reports were requested last season from all our employes on slashings and logging works which in their opinion would be a menace to adjacent timber or property. I am not informed of the particulars in this case but I am re-ferring your letter and making further inquiry of our District Warden of Whatcom county and as soon as I hear from him will write you further on the subject.

"Of course you understand the object of this law and my letter is to make disposal of logging or other slashing which, if not burned at an early date, will be a serious menace to timber and property during the dry season."

The appellant again wrote the forester:

"We have yours of the 16th. Thank you very much for your explanation of the report of your employees on the West ½ and North ½ of the S. E. Quarter, Section 19, Township 37, Range 5. We assumed that it was more or less a result of routine instructions, for we do not think that any slashings left by us constitute a menace to nearby property. We hope that it will not be necessary to do anything more about it, because we have got through logging in that section and have gone out of the logging business entirely, our logger is away on another job, and in our present situation any necessity of work up there would be considerable of a burden."

To this the forester answered:

"I am in receipt of your letter of the 17th and have also this day received a reply from our District Warden of Whatcom county in reference to your logged-off lands in Section 19, Township 37 North, Range 5. He reports that there is a heavy stand of cedar timber adjoining this logging slashing on the west. He writes me that in his opinion five men for two days could burn this slashing and protect the adjoining timber and then a man should be kept on for a few days until the fires are pretty well out, at an approximate cost of $50.00. If our warden's report of this situation is correct, I

think this work should be done. Can you not send somebody from your Tacoma office to attend to this matter. In my opinion the present is the proper time to clean up these old fire hazards. Mr. J. D. Kline, of Deming, is our District Fire Warden. I have no doubt but that he would be glad to take charge of this for you, if you desire. You understand that fire wardens do not go on duty for the state before June 1st, so he is at liberty to attend to any matter of this kind for private parties."

After writing the latter letter, the state forester had a conversation with the manager of the appellant concerning the condition of the land and the necessity of burning it over to remove the fire hazard caused by its condition. The forester and the manager are not in entire accord as to the purport of this conversation, but the forester, testifies that it was agreed that the local fire warden in Whatcom county should do the burning on behalf of the appellant, and at the appellant's expense.

In confirmation of his understanding of the conversation, the officer on behalf of the appellant wrote the forester as follows:

"In line with our conversation in our office today we wish that you would instruct the fire warden, Mr. Kline, to look after this and if the hazard exists, to burn it over at as light an expense to us as possible. You will understand that we have no further logging operations and would like to get out of this expense as lightly as possible, particularly as we thought that we had cleaned up the ground pretty thoroughly before we left it."

To this letter the forester answered that he had written the local warden to burn the debris, at as little expense as possible, having due regard to the control of the fire.

On receipt of the state forester's letter directing him to burn the debris, the local warden deemed the season

too far advanced to risk its burning before the close of the dry season, and did not undertake it until October 3, 1918. On that day he went with two assistants upon the land and started fires thereon. The fire escaped from the appellant's land into the timber of the respondents, doing extensive damage thereto.

The statute governing the burning or other removal of debris causing a fire hazard, in force at the time of the fire, is found in ch. 105 of the Laws of 1917, p. 349 (Rem. Comp. Stat., § 5804), the applicable section being § 4 of the act, which reads as follows:

"Any and all cut-over land or slashings in the State of Washington covered wholly or in part by inflammable debris and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property is hereby declared a public nuisance, and whenever the state forester shall determine and give written notice that such nuisance exists its abatement is hereby required of the owners so notified, or of the notified person or agency responsible for its existence if such be not the owner, by the burning or other removal of said debris under the state forester's direction at such time and in such manner and with such provision of help as he shall deem necessary to public safety. If the person, firm or corporation responsible for the existence of any such nuisance shall refuse, neglect or fail to abate it after notice by the state forester, the latter may cause it to be abated, and the cost thereof, and of any patrol or fire-fighting made necessary by the delay, shall be a lien upon the property upon which the nuisance was abated and may be recovered as provided for the recovery of costs in section 3 of this act: *Provided*, That slashings, made in accordance with the rules and regulations prescribed by the state board of forest commissioners, shall not be declared a nuisance."

The principal question discussed in the arguments is whether, under the facts shown, the appellant is responsible to the respondents for the escape of the fire

and the consequent injury suffered by them by reason of its escape. The appellant contends that it is not so liable. It invokes the rule that where the law takes away a man's judgment, volition, and control as to the time, manner and method of performing an act, he cannot be held for the consequences of the act, even to third persons injured by it, and argues that the statute in question does all of this; that it vests absolutely in the state forester the duty and power to prescribe the time, the manner, and the amount of help necessary to the public safety in removing a fire hazard by burning it, leaving the owner without power to exercise his own judgment with reference to any of these matters.

But we think the appellant places an unwarranted construction upon the statute. It seems to us plain that when an owner of land suffers a nuisance, such as the statute defines, to exist thereon, and receives notice from the state forester to abate it, he has a choice of two procedures: he may abate it by burning or other removal under the state forester's direction, at such time and in such manner and with such provision of help as the state forester shall deem necessary to public safety, or he may refuse, neglect or fail to abate it, and let the state forester abate it; subjecting himself to the liability of having his land charged with the necessary costs of the work. It may be—a question not necessary here to be determined—that if he adopts the latter procedure he could not be chargeable for losses caused by the negligent act of the state forester, but if he adopts the first of the procedures and undertakes to abate it himself under the forester's direction, he is so liable for any loss caused by the inadequacy of the directions. It is a mistake to say he is compelled in such a case to surrender entirely to the forester's judgment. While he is possibly required to follow the directions given by the forester, clearly it

is always within his power to refuse to proceed if he thinks the forester's precautions inadequate, and within his power to take precautions in addition to those prescribed by the forester. In other words, if an owner undertakes to abate the nuisance of this sort by burning under the direction of the forester, he is an actor in the proceeding; a joint actor with the forester it may be, but liable, nevertheless, for any loss caused to a third person by a negligent performing of the burning. The evidence makes it clear that the appellant in this instance chose the first of the procedures. He authorized the state forester to act on its behalf. In so acting, the forester acted in his individual and not in his official capacity, and the appellant is responsible for the negligent acts of the persons whom the forester employed.

A further contention is that the escape of the fire into the respondents' timber was the direct result of an intervening agency; that a high wind which arose after the starting of the fire put the fire beyond the power of control. The cases of *Stephens v. Mutual Lumber Co.*, 103 Wash. 1, 173 Pac. 1031, and *Lehman v. Maryott & Spencer Logging Co.*, 108 Wash. 319, 184 Pac. 323, are cited as sustaining the proposition that no liability attaches under such circumstances. The principle of law announced in the cases is that liability for losses caused by the escape of fire lawfully set upon one's own premises must rest in negligence—that the fact alone that the fire escaped is not sufficient to charge the person setting out the fire with liability for losses to others, but that it must be shown that there was not an exercise of due care and prudence, such as the ordinarily prudent person exercises under like circumstances; and on the question of fact involved, it was held in both cases that there was therein no evidence on which to base a finding of negligence.

But the cases are not controlling here. The rule of law announced is, of course, sound, but the facts are not the same. As we read the record, there was abundant evidence from which the jury could well find that the persons in charge of the fire did not exercise ordinary care and prudence in their management and care of the fire, and that this was the cause of the loss rather than the high wind. The question was therefore one for the jury, and as the question was fully and fairly submitted to them, we find no cause for interfer-ing with their verdict.

The judgment is affirmed.

PARKER, MITCHELL, and BRIDGES, JJ., concur.