[No. 19713.   Department One.   March 25, 1926.]

WOOD & IVERSON, INCORPORATED, *Appellant,* v. NORTH-
WEST LUMBER COMPANY, *Respondent.*[1]

[1] NEGLIGENCE (3, 12, 38) — FIRES — PRECAUTIONS AGAINST LOSS —
EVIDENCE—SUFFICIENCY.  The evidence does not sustain findings
that the owner of slashings was not guilty of negligence in
starting a fire and allowing it to spread, although he acted
pursuant to directions of fire wardens, whom he, on demand,
permitted to start and supervise the fire, where it appears that
a strong wind was liable to spring up at night, and no guard or
provision was made against such a contingency, as could easily
have been done.

[2] SAME (3, 12, 38).  The failure to cut numerous snags twenty-five
feet in height, as required by Rem. Comp. Stat., § 5789, before
burning a slashing, constitutes negligence, which, together with
the failure to provide proper guards to prevent the spread of
the fire, was the proximate cause of a neighbor's loss; and find-
ings to the contrary are not sustained by the evidence.

[3] SAME (3, 39) — FIRES — CONTRIBUTORY NEGLIGENCE — EVIDENCE.
Findings that a logging company was not guilty of contributory
negligence in failing to protect and remove its property from a
forest fire, will be sustained, where, under the conditions and
circumstances, there is no preponderance against them.

Appeal from a judgment of the superior court for
King county, Kuykendall, J., entered June 9, 1925,
upon findings in favor of the defendant, in an action
for damages to timber destroyed by fire, after a trial
on the merits to the court.  Reversed.

*Weter & Roberts,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondent.

HOLCOMB, J.—This is an action for damages suffered
from a fire set upon the land of respondent on Sep-
tember 30, 1923, to burn tops and other debris left
after logging operations.  The fire traversed some two
miles of respondent's logging works, crossed some in-

¹Reported in 244 Pac. 712.

tervening green timber, and went into appellant's logging works, where the damage was done.

Appellant based its claim of liability on the part of respondent on three grounds:

(1) That the fire was set at a dangerous time, namely, after a summer when the logging debris had become thoroughly dry and inflammable, and while it still remained in that condition;

(2) That respondent failed to cut the dry snags, stubs and dead trees over twenty-five feet in height in the area to be burned, contrary to the provisions of the statute. (Rem. Comp. Stat., § 5789);

(3) That respondent failed to provide adequate men to guard the fire after it was set, or to have available adequate fire-fighting apparatus.

Respondent defended against liability on two grounds:

(1) That the fire was started, directed and supervised by fire wardens of the state of Washington;

(2) That an unusual, strong and high wind intervened, which caused the fire to spread where it would not have otherwise gone.

On trial to the court without a jury, the trial court found:

(1) That the fire referred to in plaintiff's complaint was started, directed and supervised by the fire wardens of the state of Washington having jurisdiction thereof, and that appellant failed to sustain the burden of proof that respondent negligently started the fire, or negligently permitted the spreading thereof. The court further found that the defendant was not guilty of any negligence, either in the starting or in the spreading of the fire.

(2) That in the evening or night of September 30, 1923, there suddenly arose in the vicinity of the fire

an unusually strong and high wind, which carried the fire where it otherwise would not have spread, and that the unusually strong and high wind was an intervening cause, and the proximate cause of the spreading of the fire and its getting beyond control.

The court further found, as supplemental findings, that the fire of respondent did spread to appellant's property, and that appellant was not guilty of negligence in protecting and removing its property, but in spite thereof the same was damaged.

Having made the above findings, the court, as a matter of course, concluded that appellant was not entitled to recover, and that the action should be dismissed with costs.

Exceptions were taken by appellant to each of the two findings against it, and by respondent to the supplemental findings in favor of appellant above mentioned.

Rem. Comp. Stat., § 5792, provides that any and all inadequately protected forests, or deforested land covered in whole or in part by inflammable debris, or in any wise likely to further the spread of fire, which by reason of such location or condition, or lack of protection, endanger life or property, when adjoining, lying near, or intermingling with other forest land, is declared to be a nuisance, and that the state forester shall notify the owner when he shall learn of such condition, or the person in control or possession of such land, advise him of means and methods to be taken for its protection and require him to take the proper steps to that end.

Rem. Comp. Stat. § 5807, provides:

"Any and all cut-over land or slashings in the state of Washington covered wholly or in part by inflammable debris and which by reason of such condition

is likely to further the spread of fire and thereby endanger life or property, a finding to which effect by the state forester shall be *prima facie* evidence of such fact, is hereby declared a public nuisance, and the owner or owners thereof or the agency responsible for its existence, if such be not the owner, are hereby required to abate such nuisance forthwith under the general direction of the state forester."

Further provision of the same section was made for ten days' notice by the state forester to the person responsible for the existence of such nuisance.

Section 5789, Rem. Comp. Stat., the same provision being included in the amending section, Laws of 1923, ch. 184, p. 619, § 5, provides:

"No one shall burn any forest material until all dry snags, stubs and dead trees over twenty-five (25) feet in height, within the area to be burned, shall have been cut down and until such other work shall have been done in and around the slashing or chopping, to prevent the spread of fire therefrom, as shall be required to be done by the forester, or any warden or ranger." Rem. 1923 Sup., § 5789.

Section 5647, Rem. Comp. Stat., provides:

"If any person shall for any lawful purpose, kindle a fire upon his own land, he shall do so at such time and in such manner, and shall take such care of it to prevent it from spreading and doing damage to other persons' property, as a prudent and careful man would do, and if he fail so to do he shall be liable in an action to any person suffering damage thereby to the full amount of such damage."

It appears from the record in this case that, on September 27, 1923, the supervisor of forestry had sent out a circular letter to all logging operators and timber owners, calling attention to the law as amended in the laws of 1923, and to the orders, rules and regulations promulgated by the forestry department, notifying them to burn their cut-over lands. In the letter it was

stated that "a sufficient amount of rain has fallen so that even the most cautious need not hesitate, and there could be no excuse for further delay in burning should the weather permit." The evidence was undisputed, however, that for several days immediately prior to September 30, when this fire was started, the weather had been very warm and dry, at least in the locality of these lands.

On the evening of Saturday, September 29, two forest wardens, named Entwistle and Roundtree, called upon the superintendent of respondent's logging operations and notified him that they had come to burn the slashings in appellant's works. The superintendent would not consent thereto until he had called up Mr. Horton, the secretary-treasurer of respondent, who seems to have been in charge of the operations, and obtained his consent. Entwistle talked to Horton over the telephone, and told him that it was perfectly safe to burn the slashings, said "they are not in condition to burn," and would not burn anyway, because too green and wet. Horton told Entwistle that, if the fire wardens assumed responsibility, the superintendent of respondent on the ground could go ahead and burn the slashings; otherwise he would say no. The next morning the wardens went over the ground, and after making their survey, returned to the camp of respondent and asked the superintendent for men to assist them in the starting of the fires. They started out and set several fires in localities, where they thought there would be means of checking the fires in case they desired. They had four or five men in the employ of respondent assisting them in starting the fires. They asserted that the burning was not a success; that the ground on which they were attempting to burn the slashings was seepy and covered with so much young

green growth that the fire could not be successfully started. They also considered it safe because there was a railroad for a backfire line. This railroad was about twelve feet in width. There were a great number of dry snags and stubs more than twenty-five feet in height upon this land on which they attempted to set the fires, and which they did not require to be cut down as provided by the statute, *supra*.

The fire wardens testified that they considered the burning a failure, and at 8:00 o'clock went to bed. At 9:00 o'clock, according to one of them, he was awakened by the rattling of the windows in the room where he slept, and he arose and found the fire raging violently, jumping from snag to snag, and that it had jumped across the railroad track into snags on the other side. They also testified that, after they went to bed, a high and unusual wind sprang up, which aroused the fire to great activity, and in a very short time put it entirely beyond control. One of them testified, however, that he knew that such winds were likely to come up in the night in that locality. They put out no guard during the night, and made no provision for acting in an emergency in case a high wind sprang up.

[1] Respondent contends that the court was amply justified in finding that the fire was started entirely by fire wardens of the state, and directed and supervised by them and that an unusually strong wind intervened, which caused the fire to spread where otherwise it would not have gone.

Notwithstanding the fact that the fire was started, directed and supervised by fire wardens of the state, respondent could not escape liability on that ground alone. The same contention was made in *Galbraith v. Wheeler-Osgood Co.*, 123 Wash. 229, 212 Pac. 174. In that case we said:

"It is a mistake to say he is compelled in such a case to surrender entirely to the forester's judgment. While he is possibly required to follow the directions given by the forester, clearly it is always within his power to refuse to proceed if he thinks the forester's precautions inadequate, and within his power to take precautions in addition to those prescribed by the forester. In other words, if an owner undertakes to abate the nuisance of this sort by burning under the direction of the forester, he is an actor in the proceeding; a joint actor with the forester it may be, but liable, nevertheless, for any loss caused to a third person by a negligent performing of the burning."

Aside from the fact that there appears to us to be a preponderance of the evidence against the testimony of the fire wardens, that an unusually strong and high wind intervened between eight and nine o'clock in the evening of the day of the fire, which caused it to spread where otherwise it would not have gone, which the trial judge had the right to, and did, resolve favorably to them, the wardens themselves testified that they knew that such a wind was likely to spring up in that locality at night, and yet, neither they nor respondent made any provision against such a contingency. That would have been easy to do, for respondent had a large number of men employed in its works and at its camp, who were compelled by law to furnish such assistance as might be necessary, and be paid therefor, as might be required by the fire wardens. It seems, therefore, that the second finding made by the trial court was not justified.

[2] Nor was the failure to require the snags more than twenty-five feet in height, which were numerous upon the cut-over lands in question where the fire was started, to be cut, justified.

Respondent contends, that by a long continued construction by the state forestry department, that de-

partment has never deemed it mandatory to require such snags to be cut. The supervisor of forestry so testified, and respondent contends that the legislature seems to acquiesce in that interpretation, since it has reenacted the same provision since 1911, repeatedly. (Laws of 1911, p. 630; Laws of 1917, p. 105; Laws of 1923, p. 619.)

We cannot acquiesce in that construction of the statute, no matter how long it may have been followed by the forestry department. The statute is not ambiguous, and its first provision is that,

"No one shall burn any forest material until all dry snags, stubs and dead trees over twenty-five (25) feet in height within the area to be burned shall have been cut down, . . ." Rem. Comp. Stat., § 5789.

This is mandatory both upon the forestry department and upon the owner or possessor of lands required to be burned over. There is, then, an additional provision which provides: ". . . and until such other work shall have been done in and around the slashing or chopping, to prevent the spread of fire therefrom, etc."

The first part of that section is not discretionary on the part of the department or the land-owner. The second part of the section adds other precautions, that may be required in addition to the first part.

This is not a case like that of *Stephens v. Mutual Lumber Co.*, 103 Wash. 1, 173 Pac. 1031, where the almost undisputed evidence was, and there could be no doubt, that there arose a very strong wind, amounting practically to a storm, during the day when the fire in that case occurred.

After a careful examination of the record and the statutes governing the matter, we are convinced that the setting of the fire at the time it was started, with-

out having cut the snags and stubs of trees over twenty-five feet in height upon the area to be burned, and without providing proper guards to prevent the spread of the fire in case a wind arose, which was known to be likely, constituted negligence which was the proximate cause of the spreading of the fire.

We are therefore unable to agree with the findings and conclusions of the trial court, and its judgment based thereon.

The items of damages, and the aggregate thereof, contained in a schedule attached to appellant's complaint, were testified to by officers of appellant, and very little contest thereof was made by respondent, who apparently deemed them reasonable. The damages itemized in the schedule total $24,287.46.

[3] Respondent excepted to the supplemental finding of the trial court, to the effect that appellant was not negligent in protecting and removing its property, and contends here that appellant had ample opportunity and time to save its camp equipment which was on railroad trucks on the track, and was so located that it could have been connected with the main track within half an hour. As to this, we are convinced that, under the conditions and circumstances and the great distance the fire is shown to have jumped across intervening green timber, there is no preponderance against the finding of the trial court on that phase of the case.

Upon the record and the law, therefore, we feel obliged to conclude that the judgment must be reversed, and judgment ordered entered in favor of appellant in the sum of $24,287.46.

Tolman, C. J., Main, Fullerton, and Parker, JJ., concur.