[No. 23331.    Department One.    January 19, 1932.]

ALFRED B. CONRAD *et al., Respondents,* v. CASCADE
TIMBER COMPANY, *Appellant.*[1]

[1]Reported in 7 P. (2d) 19.

*Hayden, Langhorne & Metzger,* for appellants.

*E. K. Murray, Leo Teats,* and *Ralph Teats,* for respondents.

HERMAN, J.—Alfred B. Conrad and Mary E. Conrad, his wife,. sued to recover damages from defendant. W. F. McTee also brought suit to recover damages from defendant. Both causes of action were based upon the alleged negligence of defendant in setting fires to burn logging slashing and permitting the fires to spread, thereby damaging the plaintiffs' properties. Later, Alfred B. Conrad was substituted for plaintiff in the action brought by McTee, and the two cases were consolidated for trial in the superior court. Verdicts were returned in favor of plaintiffs in each of the cases. Defendant prosecuted separate appeals, but, by stipulation of the parties, the cases are being considered together by this court.

Appellant makes eleven assignments of error, the first, second, third and fourth of which are predicated upon the theory that there is lacking sufficient evidence to justify the verdict of the jury. These will here be considered collectively.

■ Appellant contends that, because the fire was practically confined to the slashing area during the first three days, and Ohop lake and the town of Eatonville lie between respondents' property and appellant's slashing area, because there are the Little and Big Mashall rivers, the Eatonville Lumber Company's logging railroad, the main line of the Tacoma & Eastern Railroad, Lynch creek, and at least two graveled roads, between the slashing area and respondents' property, and that, in spite of these natural fire bar-

riers, an unusually strong wind caused the fire to travel six miles in twenty-four hours, notwithstanding the efforts of many fire fighters, respondents cannot recover.

Appellant maintains, first, that, because of the great distance covered by the fire in a short period of time and the nature of the intervening terrain, the consequences complained of were not within the range of ordinarily prudent foresight; and, second, that the unimpeachable facts established that there was an intervention of unusual and not reasonably to be anticipated elements between the negligent act or acts of appellant and the loss sustained by respondents, which must stand as the sole proximate cause of that loss.

The weakness in appellant's position is that it fails to take into consideration the testimony introduced by respondents in support of their right to recover. There was evidence introduced to the effect that appellant was negligent in starting fires at a time and under conditions when it was intrinsically dangerous to do so; in failing to cut down snags and dead trees over twenty-five feet in height; in starting its fires in such manner as to permit their spread out from the points where started, thus increasing their front and rendering their control continually more difficult; and in failing to take adequate precautions to prevent the escape of the fire. There was testimony that the fire passed to the east of Eatonville and around one end of Ohop lake. The evidence before the jury afforded them ample opportunity to consider the effect of the small rivers, the railroads and graveled roads, as barriers, relied upon by appellant.

In *Hardy v. Hines Bros. Lumber Co.*, 160 N. C. 113, 75 S. E. 855, 42 L. R. A. (N. S.) 759, the court said:

"Neither the distance traversed by the fire, though lands of other parties intervened, nor the time elaps-

ing between the initial fire and the final conflagration which destroyed the plaintiffs' property, is conclusive against the existence of proximate cause, that is, that the second fire was proximately caused by the first. . . . The proximate cause of an event is understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which it would not have occurred.''

Respondents introduced testimony to the effect that winds, such as occurred during the spread of the fire, were not unusual, and were to be expected at that time and place. The trial court was correct in refusing to hold, as a matter of law, that appellant's negligence was not the sole or concurring proximate cause of the loss.

■ The fifth assignment of error is predicated upon the giving of instruction No. 7, particularly the last paragraph thereof, which is as follows:

''So in this case, if you find that the defendant was guilty of negligence as in these instructions defined, and that, notwithstanding the wind or elements, plaintiffs' property would not have been destroyed except for the negligence of the defendant, then the negligence of the defendant would be the proximate cause of the destruction, and the wind or elements would be only the means by which such negligence operated to produce plaintiffs' loss, and the defendant would be liable.''

Considered separately, the above quoted paragraph of instruction No. 7 is not to be commended as a clear statement of the law. The instructions in this case were voluminous, and when all of instruction No. 7 is read in conjunction with instructions Nos. 16, 19, 20 and 22, we believe it can be fairly said that the other instructions so amplify and elucidate instruction No. 7 as to purge the above quoted paragraph of the fault it would possess did it stand alone.

■ Appellant's sixth assignment of error is that

the trial court erred in denying appellant's motion to strike from the record and withdraw from the consideration of the jury all testimony relating to appellant's negligence in failing to cut snags, stubs and dead trees over twenty-five feet in height in the area to be burned. This motion was based upon appellant's theory that there was no evidence upon which to base a finding that the failure to cut the snags, stubs and dead trees was the proximate cause of respondents' loss.

The failure to cut such snags, stubs and dead trees over twenty-five feet in height was a violation of Rem. Comp. Stat., § 5789. It was negligence *per se*. Two witnesses testified they saw spot fires being started a quarter mile ahead of the main fire. Evidence was introduced tending to prove that such snags were a great menace in the spread of fire, especially in case of a wind. The contention that, by permitting such evidence to go to the jury, the trial court invited the jury to speculate and guess upon the question of whether this negligent act of the appellant was the proximate cause of respondents' loss, must be adversely disposed of, in view of the court's holdings in *Wood & Iverson v. Northwest Lumber Co.*, 138 Wash. 203, 244 Pac. 712, and *Mensik v. Cascade Timber Co.*, 144 Wash. 528, 258 Pac. 323.

Assignments of error Nos. 7 to 11, inclusive, are predicated upon the action of the trial court in holding that respondent A. B. Conrad had qualified as an expert witness, and permitting him to testify to what appellant contends were questions of fact well within the range of ordinary experience, and also to testify in effect as to what did or did not amount to ordinary or reasonable care in a given case.

Jones Blue Book on Evidence, volume 2, page 896, § 368, announces the rule:

"To entitle a witness to answer as an expert, it is true 'he must, in the opinion of the court, have special acquaintance with the immediate line of inquiry . . . .'"

22 Corpus Juris, p. 519, § 606, states:

"A skilled witness is one possessing, in regard to a particular subject or department of human activity, knowledge and experience which are not acquired by ordinary persons. Where he testifies as to facts he must be shown to have adequate knowledge of the matters of which he speaks, . . . ."

According to appellant's own attorneys, the basis of Mr. Conrad's qualification as an expert was some seventeen years of general service in the United States forest service, where he did a little bit of everything in the line of cruising timber, building trails and cabins, and protecting forests from fires. This service was in the Rainier national forest, the Wenatchee national forest, the Washington national forest, and the Okanogan national forest, and terminated in 1916. Such experience was sufficient to justify the trial court in permitting Mr. Conrad to testify as an expert witness.

The inquiries which appellant claims were improperly propounded to and answered by respondent Conrad, were:

"Q. What is the usual and ordinary method of burning slashings in this country?"

"Q. Now with fire in slashing to the south of that section (sec. 25), with the wind to the northwest toward those snags, what would stop fire when it got to the end of the slashing and up against those snags?"

"Q. What is the custom of ordinary prudent and careful persons in burning slashing which comes up to a bunch of snags off of their property such as found in section 25?"

"Q. What is the way they usually do it (burn slashings), from your observations; not what they should do?"

"Q. If you know the way it (burning slashings) is usually done; that is the question. How is it ordinarily done?"

"Q. In order to prevent the escape of a slashing fire to the property of others, what is the usual method employed by loggers and foresters?"

"Q. What is the custom of ordinary prudent and careful persons in burning slashing which comes up to a bunch of snags off of their property such as found in section 25? A. Those snags by all means should be cut down. Q. But the snags are on the other fellow's property?"

Taking into consideration the issues in these cases, as determined by the pleadings, and considering also the context, we conclude that the trial court did not err in asking or in permitting the questions above set forth to be asked the witness A. B. Conrad, who qualified as an expert. While the answers given by Mr. Conrad were, in some instances, quite voluminous, he was exercising the prerogatives of an expert witness, and we hold that neither the questions nor the answers complained of by appellant were erroneous.

Judgment is affirmed in each case.

TOLMAN, C. J., PARKER, MITCHELL, and BEELER, JJ., concur.