# CASES

# SUPREME COURT

# WASHINGTON

[No. 14560. Department Two. June 24, 1918.]

## L. A. STEPHENS, *Respondent*, v. MUTUAL LUMBER COMPANY, *Appellant.*[1]

NEGLIGENCE—FIRES—LOSS OF GOODS—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. Employees in a logging camp cannot recover of the company for the loss of household goods, destroyed by a fire negligently allowed to spread, where they were experienced woodsmen, knew the danger, and had every opportunity to remove and protect their goods.

SAME—FIRES—NEGLIGENCE—PROXIMATE CAUSE — EVIDENCE — SUFFICIENCY. In an action by an adjoining owner for the loss of property destroyed by a fire starting from sparks from defendant's logging engine, there can be no recovery in the absence of any evidence of negligence in allowing the sparks to escape from the engine or in allowing the fire to spread from the immediate vicinity of the engine; especially where it appeared that there would have been no loss if the wind had not suddenly changed and jumped the fire to plaintiff's premises.

Appeal from a judgment of the superior court for Thurston county, D. F. Wright, J., entered April 6, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Troy & Sturdevant,* for appellant.

*Wedmark & Grimm,* for respondent.

[1]Reported in 173 Pac. 1031.

CHADWICK, J.—This action was brought by respondent to recover damages for the loss of household goods destroyed by fire at the logging camp of the appellant on the 17th day of June, 1916. Respondent sues on his own behalf and on behalf of two others, whose claims he holds by assignment for the purpose of bringing this action. We shall first discuss the claims of respondent and his assignee Withrow.

On the day mentioned, appellant was engaged in its logging operations by means of a donkey engine and cables, which were situate over a ridge and about 1,600 feet south of its camp, which was made up of a bunk house, filing house, oil house, and several crude buildings which had been built by the respondent and were occupied by some of the men with families. The house of plaintiff and the house of Withrow were situate about 300 feet south of the bunk house and along respondent's logging road. In the same group of houses was the house of one Williams. The fire started about 2:30 p. m., about forty to one hundred feet from the donkey engine, and presumably from sparks from the engine. The donkey was equipped with an approved type of spark arrester, and it is conceded by all of the witnesses that no spark arrester will arrest all sparks or prevent fire from escaping from such engines. When the fire started, there was a light breeze from the north. The wind had been in the north for several days. The two men about the donkey undertook to put the fire out by means of a ten-quart bucket which had been provided for that purpose. It is possible that they were assisted by the hook tender—the witnesses are not agreed—but the fire had started in a pile of brush and was very soon beyond their control. They then lent themselves to moving the donkey to a place where the land had been burned over and where they thought it would be safe. The fire continued to burn until the

evening.  There were from seventy-five to eighty-three men employed in the camp.  They quit work at 5 o'clock in the evening and a part of them went to town on a car provided for that purpose by the company.  From eighteen to twenty-five men were kept in the camp to watch the fire.  During the afternoon and before 5:30, plaintiff went to his house, prepared his supper and changed his clothes, intending to go to Tenino and thence to Centralia.

The negligence alleged in the complaint is that the appellant negligently permitted the fire to spread.  Out of the testimony these facts are prominent and unchallenged: that no spark arrester will absolutely prevent the throwing of fire by an engine; that there is always danger of fire in a logging camp; that the appellant had used such precautions in the operation of its camp as are usually employed by those engaged in the logging business, in that it had, in the springtime and before the woods had become dry and inflammable, burned over an area to the south of its camp where it had previously cut off the timber; that this was a preventive measure and is consistent with reasonable care and prudence.  It is also admitted by all concerned that, between the time the fire started, at about 2:30 p. m., and until some time between 5:30 p. m. and 6 p. m., the wind was blowing from the north and away from the camp, and that there was no seeming danger to any of the buildings or personal belongings of any of the men; that, at about that time, the wind suddenly changed from the north to the south; that it was a spirited gale, and that the fire began to spread rapidly to the north, and that it "jumped," to use a word common in the record, from 1,000 to 1,200 feet over the intervening burned area and destroyed the camp, with the exception of possibly one dwelling place.

Neither plaintiff took any precaution to protect his property. Certain witnesses testify that, although the danger was discussed, plaintiff said that he would chance it a little longer. His coplaintiff, Withrow, did take two suitcases and some other property out of his house and put them on the locomotive. When the wind changed, the filer foresaw the danger and buried his saws and a truck that he used about his employment; the men in the bunk house took their goods and protected them from the fire, and Williams, the owner of the property in the third house of the group, of which plaintiff's house was one and Withrow's another, took his property out, put it on a push car and took it away.

Respondent asserts that it was the duty of appellant to protect the property, or to provide means for its safe removal. Granting, for the purpose of the argument, that appellant's foreman should have foreseen the danger and protected or removed the property, it does not follow that respondent is entitled to recover. He and Withrow are experienced woodsmen; they knew the danger of fire; they might have anticipated the danger, and they had every opportunity in point of time to have removed or protected their goods. To allow them to recover would be to say that appellant is bound by one rule of prudence and that they are bound by another, which would be in effect to say that the appellant, under the circumstances of this case, was a guarantor of the safety of their property. Respondent meets this suggestion by saying that there was no means for the removal of the property. It is true that, when he did appreciate the danger—the wind having changed just before 6 o'clock and his house was burned before 7 o'clock—there was no way to remove the goods; but he might have moved them between five o'clock and five-thirty on the "man car" which carried the men, or those of them who went into Tenino, or he

could have employed the push car that Williams had used in the exercise of his prudence, or he could have saved a part at least of his property by using the method employed by the filer and the men in the bunk house. When it was seen that the houses were in danger, appellant's foreman endeavored to save the property. The locomotive was backed down and all of the water in its tank was used in an endeavor to put out the fire; but the trestle ahead of it took fire and the locomotive had to be moved out that it might be saved.

It seems to us that this case, in a nut shell, is that all parties concerned, being experienced in the woods and knowing the danger of fires and that they frequently occur about logging operations, were in no way alarmed and were willing to take a chance, for there was an intervening space of 1,000 feet or more that had been burned over, until by a sudden change of the wind the danger was brought to the door of the camp, and that it was then too late for any of them to do that which prudence would have dictated had the wind been blowing, however slightly, from the south at the time the fire started. There is nothing in the case of *Sandberg v. Cavanaugh Timber Co.,* 95 Wash. 556, 164 Pac. 200, that contradicts our holding in this case. It is true that we held that there is a measure of responsibility on the part of an owner which requires him to use reasonable effort to prevent the spread of a fire upon his premises. But in this case we are prepared to say, as a matter of law, that the owner is not to be charged with a keener judgment and prevision than those who complain of its negligence. The fact that plaintiff was prepared to leave the camp for the week end, had changed his clothes and had his supper in his own house, indicates that he was entirely satisfied, and that, up to and after the time the wind changed, he was content to believe that the fire would continue to

spread away from the camp where it was doing no damage, unless it was to a few fallen logs. After the wind changed and the fire "jumped," there seems to have been no time for the saving of any of the buildings, and those who had property or who were responsible for it were generally concerned in their more immediate affairs.

It is urged that appellant should have kept enough men in camp to control the fire. But the issue cannot be thus narrowed. The real question is whether appellant used ordinary prudence. There is no testimony tending to show that it did not, while there is testimony that 100 or 1,000 men could not have stayed the flames after the sudden change in the wind.

Respondents recovered upon the claim of one Wherrett, who claims damages for the loss of chicken houses and some rails and fence posts which were burned in the evening of the same day. Wherrett's property is situate across the valley and is distant between a half mile and one mile from the camp, and from a quarter to a half mile from the nearest point of the burn. No one testifies that the fire that destroyed Wherrett's property came from the fire in respondent's works, but it is likely that it did. But the conclusion is inevitable that, if it did, it was because of the change in the direction of the wind and the violence of the gale. One who loses property by fire is governed by the established rules of law, and recurring to first principles, if subsequent to the act of the party charged, whether it be rightful in its inception, or wrongful in the sense that it is negligent, a new cause intervenes which of itself is sufficient to stand as the cause of the misfortune, the first act is considered as too remote to sustain a recovery. In logging operations and in the clearing of new lands, it is necessary to build fires and to destroy waste. This cannot be done without a certain hazard

to other property, but the law does not, for that reason, deny the right to maintain fires in the prosecution of legitimate business, nor will it charge one with negligence who fails to put out a fire which is not threatening, when such fire, by reason of some new cause, lodges on the property of another or goes beyond the control of the person who set it out. The law is well stated in *Ryan v. New York Central R. Co.,* 35 N. Y. 210, where it is said:

"To sustain such a claim as the present, and to follow the same to its legitimate consequences, would subject to a liability against which no prudence could guard, and to meet which no private fortune would be adequate. Nearly all fires are caused by negligence, in an extended sense. In a country where wood, coal, gas and oils are universally used, where men are crowded into cities and villages, where servants are employed, and where children find their home in all houses, it is impossible that the most vigilant prudence should guard against the occurrence of accidental or negligent fires. A man may insure his own house or his own furniture, but he cannot insure his neighbor's building or furniture, for the reason that he has no interest in them. To hold that the owner must not only meet his own loss by fire, but that he must guarantee the security of his neighbors on both sides, and to an unlimited extent, would be to create a liability which would be the destruction of all civilized society. No community could long exist, under the operation of such a principle. In a commercial country, each man, to some extent, runs the hazard of his neighbor's conduct, and each, by insurance against such hazards, is enabled to obtain a reasonable security against loss. To neglect such precaution, and to call upon his neighbor, on whose premises a fire originated, to indemnify him instead, would be to award a punishment quite beyond the offense committed. It is to be considered, also, that if the negligent party is liable to the owner of a remote building thus consumed, he would also be liable to the insurance companies who should pay losses to such remote owners. The principle of subrogation

would entitle the companies to the benefit of every claim held by the party to whom a loss should be paid.''

But if the rule were otherwise, respondent has not sustained the Wherrett claim as he made it in the pleadings. He alleges that appellant negligently and carelessly allowed coals and fire to be thrown from the engine, and that he negligently and carelessly permitted the fire to escape from the immediate vicinity of the engine. The testimony wholly failed in these particulars. The fire did not escape from the immediate vicinity of the engine or from the lands owned by appellant, through the negligence of any one. If the fire, being upon appellant's lands, had gradually moved toward the property of Wherrett, so that it could be said that appellant could have reasonably anticipated harm to his property, it would have been incumbent upon it to make a reasonable effort to stay its progress, but we understand the law to be that no man is to be charged with negligence unless it can be said, as a matter of law, upon the facts found, that he might, by the exercise of ordinary prudence, have avoided the injury; but still, if we give to the pleadings the meaning which counsel would now give to his charge of negligence, Wherrett would still have no right to recover.

"We construe both paragraphs of the complaint in this case to mean that the appellant's servants and employees negligently, but nevertheless accidentally, set fire to the station-house adjacent to appellee's hotel building, and that while the station-house was on fire and being thereby consumed, the wind intervened and blew some of the sparks and flames over onto the hotel building, thus communicating the fire also to it, and causing it, with the personal property described, to be also burned up and destroyed. .

"As thus construed, neither paragraph of the complaint charged, either in direct terms or in equivalent words, that the destruction of the hotel building was the natural as well as the immediate and proximate

consequence of the burning of the station-house. On the contrary, the fair inference, from the averments in both paragraphs, was, that, if the wind had not intervened as a new and independent agency, the fire would not have extended to and consumed the hotel building and other property connected with it." *Pennsylvania Co. v. Whitlock,* 99 Ind. 16, 26, 50 Am. Rep. 81.

We are convinced, upon a reading of the whole record and due attention to the cases cited, that respondent cannot recover. The case is therefore reversed, and remanded with instructions to the lower court to sustain the motion for a judgment *non obstante.*

MAIN, C. J., HOLCOMB, MOUNT, and MACKINTOSH, JJ., concur.