**Arthur A. ARNHOLD et al., Appellants,**

v.

**UNITED STATES of America et al.,
Appellees.**

**RAYONIER INCORPORATED, a corporation, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 16367, 16368.**

United States Court of Appeals
Ninth Circuit.

Oct. 26, 1960.

Ferguson & Burdell, W. H. Ferguson, Donald McL. Davidson, Seattle, Wash., for appellant, Arnhold.

Holman, Mickelwait, Marion, Black & Perkins, Lucien F. Marion, Burroughs B. Anderson, Seattle, Wash, for appellant, Rayonier.

George C. Doub, Asst. Atty. Gen., Charles P. Moriarty, U. S. Atty., Seattle, Wash., Alan S. Rosenthal, Kathryn H. Baldwin, Attys., Dept. of Justice, Washington, D. C., for the United States, appellee.

Wright, Innis, Simon & Todd, Donald A. Schmechel, Roger L. Williams, Seattle, Wash., for appellee, Port Angeles and Western Railroad Co.

A. R. Truax, Trustee in Reorganization. Skeel, McKelvy, Henke, Evenson & Uhlmann, W. R. McKelvy, George Kahin, Seattle, Wash., for appellee Fibreboard Products, Inc.

Before POPE, MAGRUDER and MERRILL, Circuit Judges.

MAGRUDER, Circuit Judge.

This litigation arose out of a forest fire in August and September, 1951, on the Olympic Peninsula in the State of Washington.

A complaint was filed under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. by Rayonier Incorporated, one of the property owners who suffered loss, against the United States of America as sole defendant, charging negligence by employees of the United States in their failure to prevent, control, and extinguish the forest fire. This case is now our No. 16368.

A separate and distinct complaint was filed by Arnhold, and others, whose property was destroyed in the same fire, against the United States of America under the Tort Claims Act and also, by reason of diversity of citizenship, against the Port Angeles and Western Railroad Company, and Fibreboard Products, Inc., one of the owners of land through which the fire spread. Certain insurance companies were added as "additional plaintiffs" in this our No. 16367.

These cases were here on an earlier appeal. At first the district court entered judgment dismissing the complaints as being insufficient in their allegations, and we affirmed, in Rayonier Inc. v. United States, 9 Cir., 1955, 225 F.2d 642, and in Arnhold et al. v. United States, 9 Cir., 1955, 225 F.2d 650. However, the Supreme Court granted certiorari, and setting us right on our misapprehension of the meaning of certain language in Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, vacated our judgments and remanded the cases to the district court with directions to consider the complaints anew "wholly free to determine their sufficiency on the basis of

whether the allegations * * * would be sufficient to impose liability on a private person under the laws of the State of Washington." Rayonier Inc. v. United States, 1957, 352 U.S. 315, 321, 77 S.Ct. 374, 377, 1 L.Ed.2d 354.

The two cases were consolidated by the district court for trial. After filing an elaborate opinion and various findings, which were later revised somewhat, the district court entered judgments again dismissing the complaints. Counterclaims by the United States against Rayonier Incorporated and the Port Angeles and Western Railroad Company were dismissed at the same time, but the United States has taken no appeal from this aspect of the judgments and these matters are not before us.

Separate appeals were taken by the losing parties from the above judgments. These appeals were heard by us together and the cases may be disposed of by a single opinion. In the view we take, it is not necessary to go behind the district court's findings of fact.

The fire in question broke out in the Soleduck District. In that district was situated the headquarters of Forest Service District Ranger Floe, who was the government's chief fire control officer in the area. The United States of America entirely owned sixty acres south of the town of Heckelville. Through the top of this 60-acre tract ran the tracks of the Port Angeles and Western Railroad. The railroad's right of way was actually in the railway's possession under executory contracts of sale from the defendant, the United States of America. About noontime on August 6, 1951, a locomotive operated by the defendant railroad started on its right of way in the 60-acre tract the so-called Heckelville spot fire. This fire spread to a 1600-acre area owned in part by the United States and in the remaining part by the defendant Fibreboard Products, Inc. The fire swept through this 1600-acre tract and eventually expanded to destroy the Rayonier property many miles away and also the property of the various plaintiffs in our No. 16367.

■ Under the Federal Tort Claims Act, we have to determine whether the United States, if it had been a private party, would have been liable for the various losses under Washington law. The amount of these losses has been stipulated and is not now in dispute.

■ In this connection, we need not rely upon any affirmative obligation of the United States, as legal owner of the right of way, to go upon the right of way of the railroad to suppress the Heckelville fire as soon as it started. But it is the law of Washington, as it is the law generally, that a land occupier has an affirmative obligation to use care to confine any fire on his premises, regardless of its origin, in favor of all persons off his premises who are subjected thereby to an unreasonable risk of damage due to escape of the fire. In addition, in this case the United States had entered into a cooperative agreement, under 16 U.S. C.A. § 572 and R.C.W. 76.04.400, whereby the United States had undertaken to protect all non-United States owned land in the region from fire and to take "immediate vigorous action" to control all fires breaking out in the protected area.

■ This agreement, which was relied upon by Rayonier and by others, would be the basis of an affirmative obligation of the United States to use care in the premises if there were no other basis of liability on its part in its capacity as land occupier. See United States v. Hull, 1 Cir., 1952, 195 F.2d 64, 69.

■ The briefs in this case, as well as the findings of the district court, contain a great deal of matter on the subject of "proximate" or "legal" cause. Before we get to the question of legal cause, the defendant's breach of duty must be shown by the plaintiff to be a "cause in fact" of the plaintiff's asserted loss. This involves a finding of fact, of course, and the government seems to maintain that we must necessarily sustain the district judge's finding that the defendant was not a cause in fact of the plaintiff's loss. We do not believe that the district judge could have ever intended to make any

such finding. For everybody concedes that the fire that caused the losses in question can be traced back in unbroken sequence to the Heckelville spot fire previously mentioned, which smoldered for a time and perhaps was erroneously thought to be under control, but which ultimately broke loose and spread to the plaintiffs' premises in September of 1951.

 Though we have been referred to no Washington case on the point, we may assume the Washington law to be laid down in Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, and in Restatement, Torts § 281(b) (1934), that, for a defendant to be liable for an unintended invasion of an interest of another, it is necessary to find that the conduct of the defendant was negligent with reference to such interest or any other similar interest of the other which is protected against unintentional invasion.

 In other words, when the district judge finds District Ranger Floe to be initially "negligent," we take it he means not negligent in the abstract, but negligent in the sense that such negligence subjected appellants' property to an unreasonable risk of a fire loss. This is what the district judge seems to have in mind when he says in his Memorandum Opinion:

"It is also well recognized: that small fires in the forest shortly following inception may be readily controlled and suppressed by prompt and thorough action; that such fires easily and rapidly spread and rarely remain small or die out unattended without active control and extinguishment; and that forest fires by the minute are more difficult and dangerous to confine and control as they spread under conditions of wind, heat and low humidity. For these reasons ordinary and reasonable care requires urgent speed, vigorous attack and great thoroughness in reaching and putting out fire in the forest. In the early stages of firefighting action a few minutes' delay,

a man or two less than needed, and too little of the right kind of equipment may, any one of them, make the difference between a small fire quickly disposed of with little or no damage and a conflagration of extensive proportions resulting in great loss of life and property."

In amended finding No. IX, the district judge found:

"On August 6, 1951, at and prior to the time when the Heckelville spot fire occurred, District Ranger Floe knew or should have known that a fire in that area which was not extinguished might burn continuously and progressively and might burn property for many miles in any direction, including westerly and southerly to the Pacific Ocean."

We may also take it, though we have no Washington cases that we can cite, that the State of Washington does not, as does the State of New York, use the doctrine of "proximate cause" somewhat arbitrarily to cut off a liability that would otherwise rest upon a negligent actor. See Homac Corp. v. Sun Oil Co., 1932, 258 N.Y. 462, 180 N.E. 172; Frace v. New York, Lake Erie & Western R. Co., 1894, 143 N.Y. 182, 38 N.E. 102.

As District Ranger Floe well knew, the spring and summer of 1951 were among the driest on record in the Soleduck District, and the risk of forest fires was especially severe. The district court's crucial amended finding is as follows:

"XVI.

District Ranger Floe and his subordinates, acting within the scope of their duties as officers and employees of the United States, failed to act as promptly, vigorously and continuously as they were required to do in the exercise of ordinary care in attacking the Heckelville spot fire and in attempting to confine it to the 60-acre area. Whether, or at what time and place, the fire might have been contained or suppressed within said area but for such negligence is a matter of speculation and cannot be

determined as a reasonable probability under the evidence. It has not been established by a preponderance of the evidence that had such negligence not existed, the fire would have been contained in the 60-acre area, or that there is any causal relationship between that negligence and the ultimate existence of fire in the 1600-acre area."

It is obvious that when one considers what might have happened had the facts been different from what they were, one necessarily enters into the area of "speculation." The burden of proof is certainly not upon the plaintiff to show that, had the defendant not been negligent at the start, the fire would have been contained within any particular space. Amended finding XVI has within it, therefore, a fundamental error of law.

It may well be, as found by the district court, that the defendant was not thereafter negligent in the "mop-up period." [166 F.Supp. 387.] But it is perfectly clear from the court's findings that, had the United States not been initially negligent, the Heckelville spot fire would have been extinguished before it finally spread, as were several other spot fires set by the same locomotive of the Port Angeles and Western Railroad. When the defendant's breach of duty is shown to have brought about the same type of loss, the contemplation of the risk of which made the defendant's conduct negligent, it seems pointless to say that, though the defendant was negligent, his negligence was not the "proximate cause" of the ultimate loss.*

For the reasons above indicated, the plaintiffs in No. 16367 also were entitled to recover against the United States in the stipulated amounts.

Since appellants in No. 16367 will get their judgment against the United States, we suspect that they are rather indifferent to what happens to their causes of action against the Port Angeles and Western Railroad Company and against Fibreboard Products, Inc. Nevertheless,

we are called upon to decide the liability of these two defendants in No. 16367.

■ We are not disposed to challenge the district court's finding that, though the Railroad was negligent in allowing some parts of its right of way to fall into an unduly dangerous fire condition, this negligence was not a cause in fact of the setting of the fire in the Heckelville area. Nor do we challenge the district court's finding that the Railroad was guilty of no negligence in the operation of the locomotive which set the Heckelville spot fire. Still, when a fire broke out on the right of way occupied by the railway, even though such fire was set through no negligence of the occupier, certainly the railway had the affirmative duty to use care to see that the fire did not spread beyond its right of way and endanger other interests beyond. As the district court correctly stated the Washington law to be:

"An owner or occupant of forest land with knowledge of a fire burning on such land, even though started by strangers, must exercise ordinary and reasonable care to prevent spread of the fire to the damage of others. Failure to do so is negligence rendering the landowner or occupant liable for all damage proximately resulting therefrom."

But this duty on the occupier's part is certainly "non-delegable" in the sense that if the railroad makes an agreement with another (here the United States) to furnish this fire protection, the occupier is liable for damages negligently caused by such delegatee. Having held the United States liable for the losses suffered by appellants, we must also hold the Railroad liable.

Similar reasoning would moreover render Fibreboard Products, Inc., liable for the losses suffered by appellants. The district court found the Forest Service negligent "in its firefighting action during the initial period, August 6–10, in which interval the fire reached Fibreboard lands." and, as we have shown,

---

* But see The Lusitania, D.C.S.D.N.Y.1918, 251 F. 715, 732.

this initial negligence by the Forest Service was a proximate cause of the losses sustained by appellants.

The judgments of the District Court are vacated and the cases are remanded to that Court with directions to entertain further proceedings not inconsistent with this opinion.