[No. 54763-7. En Banc. March 15, 1990.]

NORMAN A. OBERG, ET AL, *Respondents*, v. THE
DEPARTMENT OF NATURAL RESOURCES,
*Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John W. Hough* and *Mark S. Green, Assistants,* for appellant.

*Stanislaw, Ashbaugh, Chism, Jacobson & Riper,* by *Richard M. Stanislaw, John S. Riper, Terry R. Marston II,* and *David C. Burkett,* for respondents.

BRACHTENBACH, J.—Plaintiffs sued the State of Washington, acting through its Department of Natural Resources (DNR), for damages sustained as a result of a fire which escaped from DNR land. The fire became known as the Barker Mountain fire. Barker Mountain, east of Tonasket, is bordered on the south by a state highway and on the north by the Siwash Creek Valley. A portion of this land is owned by the State. Verbatim Report of Proceedings, at 122–23 (Apr. 15, 1987).

In the early morning hours of a Wednesday, a lightning storm started numerous fires in northeastern Washington, including the Barker Mountain fire. DNR describes what became the Barker Mountain fire as a "small lightning strike fire." Brief of Appellant, at 7.

The initial fire was but a quarter mile off a paved highway, in terrain described as "gentle." It was initially no larger than a campfire. By about 6 a.m. on that Wednesday DNR had received a telephone report of a fire on the south

side of Barker Mountain. DNR dispatched some fire fighters on Wednesday afternoon, but by Wednesday evening these forces were withdrawn. The fire escaped from DNR property on Thursday afternoon and subsequently, plaintiffs' properties to the north of the initial fire lines on Barker Mountain were damaged. On these days DNR was fighting not only the Barker Mountain fire but other major and minor fires.

These facts are only relevant as a background for the legal issues. This is so because the jury, in answers to special interrogatories, found (1) the fire which damaged plaintiffs' property started on DNR land, (2) DNR was negligent, and (3) negligence was the proximate cause of plaintiffs' damages. In addition, DNR stipulated that "plaintiffs relied upon the DNR to furnish them with fire protection." Verbatim Report of Proceedings, at 95–96 (Apr. 13, 1987). DNR does not challenge the sufficiency of the evidence to support the specific findings of negligence, nor does DNR assign error to any instructions given nor to the failure to give any proposed instructions. We necessarily assume, because it is now beyond challenge, that there was sufficient evidence that DNR was negligent in allowing the escape of fire from its land. Further, we also make the critical assumption that the jury was properly instructed on the duties which DNR had and which it breached. In its briefs DNR recounts much detail about fighting these fires. All of the fire fighting difficulties faced by DNR and all of the demands placed upon its resources were before the jury. Since DNR raises no challenge to the admissibility of any evidence, no challenge to the sufficiency thereof, no challenge to the amount of damages nor any challenge to the legal correctness of instructions (which are not a part of the record), the trial proceedings are conclusive.

DNR's sole assignment of error is that the trial court erred in denying its motion for judgment notwithstanding the verdict. The essence of DNR's position is that the public duty doctrine prevents liability from attaching to its negligence. It admits that it has statutory fire fighting

duties and common law and statutory duties as a land-owner. However, DNR contends that its fire fighting duties are only to the public, and these plaintiffs are owed no duty in particular. DNR argues that its duties as a landowner are "subsumed" (its phrase) into its fire fighting duties when it fights more than one fire in the same area.

We hold that DNR had a duty to these plaintiffs and its landowner duties are not "subsumed."

The legal issues presented are very narrow indeed. Particularly enlightening is DNR's own narrowing of its escape route by these statements:

 ▮ There is no dispute that Natural Resources has a duty to provide fire protection from uncontrolled fires on forest land, or which threaten forest land. RCW 76.04.015 and .750.

Brief of Appellant, at 41.

 ▮ We do not dispute that Natural Resources would be liable under RCW 76.04.730 for the escape of a fire from its land under normal circumstances.

Brief of Appellant, at 54.

 ▮ Private landowners in Washington have a common law duty to exercise reasonable care in preventing fire from spreading to lands of neighboring owners. A similar duty is imposed by statute, *e.g.,* RCW 76.04.730.

(Citations omitted.) Brief of Appellant, at 53–54. We note, as discussed hereafter, DNR is within the statutory definition of "landowner."

 ▮ There is no dispute that Natural Resources owes a duty of fire protection to those forest landowners who pay the forest protection and fire suppression assessments. *State ex rel. Showalter v. Goodyear,* 30 Wn.2d 834, 194 P.2d 389 (1948); *State ex rel. Sherman v. Pape,* 103 Wash. 319, 323, 174 Pac. 468 (1918).

Clerk's Papers, at 34.

We start our analysis of DNR's arguments with the premise that DNR, whether acting in its governmental or proprietary capacity, is liable for its tortious conduct as would be a private person or corporation. RCW 4.92.090. Given this all–encompassing waiver of sovereign immunity, we have said: "[d]efendants are governmental entities, but

in only rare instances does this preclude liability." *Hartley v. State,* 103 Wn.2d 768, 781, 698 P.2d 77 (1985).

We first identify the various statutory and common law duties of defendant DNR. Next we examine to whom each of these duties is owed; if a duty is owed by DNR solely to the public in general, the public duty doctrine will operate to foreclose a negligence claim by plaintiffs; if, on the other hand, DNR owes any particular duty to the plaintiffs, separate from the general public, the plaintiffs may bring a claim under one of the exceptions to the public duty doctrine. *Hartley,* at 781.

Initially, we consider DNR's potential liability as a landowner which negligently allowed a fire to escape from its land. Parenthetically we note that the fact that the initial small fire was caused by lightning is of no consequence:

> . . . there may be negligence [by the landowner] . . . in his failure to use due diligence in preventing the spread of a fire originating upon his own land though it so originate[d] without any act or fault of his own.

*Sandberg v. Cavanaugh Timber Co.,* 95 Wash. 556, 558, 164 P. 200 (1917).

The statutes governing landowner liability are found in RCW 76.04. The present contents of that chapter were recodified in 1986, after this fire, but DNR specifically adopts the recodified statutes as controlling.[1]

The obvious question is whether DNR is within the ambit of the statutes creating landowner duties. Clearly it is. RCW 76.04 specifically defines "owner of forest land," "landowner," or "owner" to include the owner of any *public* or private forest land. RCW 76.04.005. Further, even DNR must pay fire protection assessments for its land. RCW 76.04.610 provides that every nonfederal public body is liable for such assessment. Thus, the Legislature's express inclusion of DNR within the landowner category indicates

---

[1] "The Forest Protection Act, Chapter 76.04 RCW, was recodified in 1986. Chapter 100, Laws of 1986. As the relevant substance of the statutes had not changed, citation is to their current version." Brief of Appellant, at 33 n.8.

that the sections governing landowner liability apply to DNR.

■ An owner of forest land has a positive duty to provide adequate protection against the spread of fire thereon or therefrom. RCW 76.04.600.

The standard of care required of a landowner in preventing the *spread* of fire is set by RCW 76.04.730:

> It is unlawful for any person to negligently allow fire originating on the person's own property to spread to the property of another.

By definition in the statute, RCW 76.04.005, DNR is a landowner, and has a duty *as a landowner* to provide adequate protection against the spread of fire from its land. By the unchallenged jury's answers, DNR has breached RCW 76.04.600 and .730.

As to a common law duty upon a landowner to use due care in preventing the spread of fire, DNR admits that such common law duty exists in Washington. *Jordan v. Spokane, P.&S. Ry.,* 109 Wash. 476, 480–81, 186 P. 875 (1920); *Sandberg v. Cavanaugh Timber Co.,* 95 Wash. 556, 558–62, 164 P. 200 (1917).

Where the federal government allegedly acted negligently in its capacity of landowner and fire fighter, the Ninth Circuit recognized

> it is the law of Washington . . . that a land occupier has an affirmative obligation to use care to confine any fire on his premises, regardless of its origin, in favor of all persons off his premises who are subjected thereby to an unreasonable risk of damage due to escape of the fire.

*Arnhold v. United States,* 284 F.2d 326, 328 (9th Cir. 1960) (vacating 166 F. Supp. 373 (W.D. Wash. 1958)), *cert. denied,* 368 U.S. 876 (1961).

That court further noted that the federal government, by agreement,

> had undertaken to protect all non–United States owned land in the region from fire and to take "immediate vigorous action" to control all fires breaking out in the protected area.
> This agreement . . . would be the basis of an affirmative obligation of the United States to use care . . . if there were no

other basis of liability on its part in its capacity as land occupier.

(Citations omitted.) *Arnhold,* at 328. *See also* 166 F. Supp. at 380, 386 (although its determination regarding the sufficiency of the evidence establishing negligence was contrary to that of the Ninth Circuit, the District Court reached the same conclusions as to landowner and fire fighting duties under Washington law).

We have concluded that DNR had statutory and common law duties as a landowner. It is liable for its established negligence unless the public duty doctrine precludes liability. As noted above, it is only in "rare instances" that the total waiver of sovereign immunity by RCW 4.92.090 is not applicable.

DNR argues that this is one of those "rare instances" because its duties as a fire fighter are protected by the public duty doctrine. DNR can escape its liability as a landowner only if (1) the public duty doctrine is applicable here and (2) its landowner duty is "subsumed" into its claimed public duty.

We conclude that the public duty doctrine is not applicable here so DNR is liable for its negligence as to these plaintiffs. We emphasize the narrowness of this holding because of the peculiar state of this record and the unique dual, specific duties statutorily placed on DNR.

Our recent case of *Bailey v. Forks,* 108 Wn.2d 262, 737 P.2d 1257 (1987) summarized the principles of the public duty doctrine. As *Bailey,* at 265, and cases therein cited, point out, the fundamental inquiry is whether the governmental unit owed a duty to this particular plaintiff as contrasted to a duty owed to the public in general.

One of the situations in which the court has found an actionable duty is where a legislative enactment evidences an intent to identify a particular and circumscribed class of persons. *Halvorson v. Dahl,* 89 Wn.2d 673, 676–77, 574 P.2d 1190 (1978).

We hold that the statutory scheme here involved does identify a particular and circumscribed class of persons, including these plaintiffs, to whom multiple duties were owed by DNR.

Perhaps it would be wise and prudent to separate clearly the duties of DNR as a landowner and as a fire fighter. The Legislature has not done so, and in fact, has intermixed these duties. As delineated above RCW 76.04 places specific duties upon forest landowners regarding fire protection and suppression. RCW 76.04.600, .730. After placing these original duties upon the landowner and including DNR within the landowner category, the Legislature then mandates that DNR shall provide adequate protection if the landowner does not. If a fire starts and proper action is not taken to prevent its spread, DNR is ordered by statute to summarily suppress it. RCW 76.04.600, .610, .750.

Thus, DNR not only has a mandatory duty to suppress fires, RCW 76.04.610, .750, it has a concomitant duty as a landowner, RCW 76.04.600, .730. The Legislature itself has imposed upon DNR this peculiar set of duties by specifically defining "forest landowner," "owner of forest land," "landowner," or "owner" to include DNR. RCW 76.04-.005(9).

In addition to the above statutory scheme, we find specific intent to protect a particular and circumscribed class of persons. The statute under which DNR admits liability "under normal circumstances" identifies the protected class. By its terms the statute is designed to protect adjacent landowners because its purpose is to prevent the "spread [of fire] to the property of another." RCW 76.04-.730.

There is still more telling evidence of legislative intent to benefit adjoining landowners because if they do not provide the required fire protection, forest landowners are *assessed by DNR* to pay therefor, and then, by statute, DNR "*shall provide such protection*". RCW 76.04.610(1). Thus, the

very class of persons, forest landowners, who have the original obligation to provide fire protection are charged a special assessment to pay for that protection if they fail to provide it and DNR, in their place, provides such protection.

There is still more which illustrates how this whole scheme is aimed at the protection of forest landowners, not just the public in general. For instance, there is, *by statute,* a different assessment per acre for forest land east of the Cascade Mountains than for land west of the summit. There is even a differential based on the size of the parcel of forest land. RCW 76.04.610(1).

· These plaintiffs paid their assessments. *DNR stipulated that these plaintiffs relied upon DNR for fire protection.* Verbatim Report of Proceedings, at 95–96 (Apr. 13, 1987).

 This case is not the first judicial pronouncement upon the relationship of the special fire protection assessments to the landowner who paid them. In *State ex rel. Sherman v. Pape,* 103 Wash. 319, 321–22, 174 P. 468 (1918), the issue was whether the forest fire protection assessment had to be paid into the state general fund, subject to appropriation, or whether the assessment funds were trust funds not belonging in the general fund. The court held that the assessments were a trust fund. The court specifically categorized the assessments and their disbursement for fire protection to be "made for and on behalf of the private forest landowners, *for their special benefit* as well as incidentally for the general benefit on the whole public." (Italics ours.) *Sherman,* at 324. A general benefit to the public does not preclude an intent to provide protection to a specific class. *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975).

Finally, we note that the Legislature has authorized DNR to enter upon any lands, public or private, to carry out its duties under RCW 76.04 and other statutes. Such entry shall not be a trespass, per the statute, but nothing in that statute "shall limit or diminish any liability which would otherwise exist as a result of the acts or omissions" of DNR.

RCW 76.01.060. This pronouncement by the Legislature indicates an assumption that DNR is potentially liable for its negligent conduct under the statute.

DNR concedes that it has a duty, and therefore liability for breach of that duty, under RCW 76.04.730; it states "[w]e do not dispute that Natural Resources would be liable under RCW 76.04.730 for the escape of a fire from its lands under normal circumstances." Brief of Appellant, at 54. Obviously DNR believes that more than one fire is the less than normal circumstance which precludes liability, for DNR states: "[w]e do not contest that the State could be liable in a single fire situation." Brief of Appellant, at 58.

DNR then goes on to argue that when it responds to numerous fires (more than one by its own standard) in the same area (how large an area we are not told) then it has no liability because its landowner duty is "subsumed" into its public duty to prevent and suppress forest fires. Brief of Appellant, at 54–55.

This distinction defies logic. To repeat, DNR's analysis is that it would be liable to these plaintiffs if it were negligent (as it was) in failing to prevent the spread of a single fire from its lands to the plaintiffs' lands. However, because there was more than one fire, DNR argues it is not liable.

There is nothing in the statutes to lend the slightest support to DNR's novel theory. Indeed, DNR cites no precedent, either direct or by analogy, which has even considered its on–again/off–again theory of liability/no liability, much less adopted it.

Despite the lack of precedent, we have examined carefully the reasons advanced by DNR for adoption of its theory, always bearing in mind, however, that DNR admits it would be liable if it were fighting only a single fire. DNR advances three policy reasons why it should escape liability for its negligence.

First, DNR argues if it is liable here, then it would attach higher priority to fighting fire on its own lands. We are not persuaded by this make–weight argument, nor was the trial court. The trial court precisely and logically rejected the

defendant's argument. The court's analysis, as follows, is compelling:

DNR's conduct should be governed by whether it was negligent in allocating resources and the manner in which it responded to the fire the same as any other private landowner and not necessarily whether or not the fire started on its property or elsewhere then spread across its property.

Liability would flow from its negligent suppression of or failure to suppress a fire starting on or spreading onto its land then to that of another versus a fire that did not start or spread onto property.

In other words, if a fire of higher priority in terms of life, property and timber or other value started on private property and DNR committed to it and then a fire started on DNR's property and DNR could not respond effectively to it and fighting both fires exceeded its ability to adequately suppress both fires, DNR could not be said to be negligent as a landowner if unable to stop the fire that occurred on DNR property.

Oral Decision of the Court, at 13 (June 12, 1987).

In other words, defendant's potential liability is not absolute; its liability depends upon the circumstances. Here there was extensive evidence of all the problems facing the defendant in fighting multiple fires. But the evidence of defendant's negligence, *under these facts,* was so great that defendant does not even challenge the jury's conclusion that it was in fact negligent.

The defendant's second policy reason why it should escape liability for its negligence is that it would be unfair to subject it to "after–the–fact, courtroom scrutiny of emergency firefighting decisions." Brief of Appellant, at 56–57. Needless to say, defendant cites no legal authority to support its position for this argument. Moreover, the same argument could be made for any professional defendant or product manufacturer defendant, or, indeed, for the ordinary driver whose driving is examined after the fact by a jury.

Defendant's argument must fail when one recognizes that it chose *not* to challenge the evidence supporting the jury's finding of negligence, and that it chose *not* to challenge the instructions under which the jury found that negligence.

Thus, defendant tacitly admits the soundness and fairness of the jury's scrutiny of its emergency fire fighting decisions.

The conclusion is inescapable that defendant was negligent, admits it was negligent, and can only escape its judgment liability by this court holding it immune. The Legislature has abolished defendant's sovereign immunity, RCW 4.92.090, yet it is immunity which defendant seeks.

The third policy argument advanced by defendant for its claim of immunity is that its duty as a landowner was "subsumed into its public duty *as a matter of fact.*" Brief of Appellant, at 57. Defendant argues that it was acting in its governmental capacity in fighting these fires. Brief of Appellant, at 55. RCW 4.92.090 renders meaningless that distinction. This argument highlights the uncontrovertible fact that what defendant actually wants is for this court to resurrect sovereign immunity.

DNR's argument confuses the public duty doctrine, which negates the *existence* of a duty to a particular plaintiff, with sovereign immunity, which admits the existence of a duty and a tort for its breach, but denies liability because of immunity. *J&B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983), *overruled on other grounds in Taylor v. Stevens Cy.,* 111 Wn.2d 159, 168, 759 P.2d 447 (1988). In other words, defendant is presenting the public duty doctrine as a defense to liability, not to negate the existence of a duty. Sovereign immunity is a defense to liability, but the public duty doctrine is not.

In summary, we hold that DNR is liable as a landowner under Washington's statutory and common law and that the public duty doctrine does not negate the jury's unchallenged finding that it was negligent.

The judgment is affirmed.

CALLOW, C.J., UTTER, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority holds that the Department of Natural Resources, in carrying out its statewide fire fighting statutory duties in fighting over 80 lightning–caused fires, including 7 project fires, with only 700 men, had a statutory duty to give priority to fight the fire on Barker Mountain first as it is owned by the State. The majority affirms a judgment for over $2,600,000 in damages because the State breached its alleged landowner duty by not first putting out the fire on Barker Mountain.

The majority on page 280 *assumes* its whole case stating:

We necessarily assume, because it is now beyond challenge, that there was sufficient evidence that DNR was negligent in allowing the escape of fire from its land. Further, we also make the critical assumption that the jury was properly instructed on the duties which DNR had and which it breached.

There is no justification for such assumptions as such assumptions are contrary to the true facts.

The majority through its analysis finds that the liability of the State as a landowner was presented to the jury, and the jury was instructed as to the liability of the State as a private landowner. This is totally false. The only issue submitted to the jury was whether or not DNR had a duty as a fire fighting organization to fight this fire.

The majority opinion is also sprinkled with statements that DNR admits negligence. This is entirely false—it only admits negligence if the public duty doctrine doesn't apply.

The only issue here is whether or not the State, in performing its statewide fire fighting duties, owes an individual duty to the plaintiffs, rather than a public duty to the citizens in general.

The plaintiff landowners pleaded a landowner cause of action in their complaint, and the trial judge, on the State's preliminary motion for summary judgment, ruled against the plaintiffs and held that the State owed no individual duty to private landowners. This is evidenced by the trial judge's statement at the proceedings:

[the court] [would] grant the Partial Summary Judgment on the argument that *the State owed no private landowner duty,* but was functioning and acting in performance of its general

duty to the State as a whole and therefore its liability, if any, came under whether or not the public duty doctrine exceptions applied.

(Italics mine.) Report of Proceedings, at 4 (Apr. 7, 1987). The trial judge's declarations as to how the jury was instructed was corroborated by trial counsel at the time of oral argument before this court.[2] The case went to trial only on the issue of the State's performance of its general duty to fight fires and whether any public duty doctrine exceptions existed, not on the duty of the State as a private landowner.

Thus the trial judge, in the motion for summary judgment, ruled that the State owed no private landowner duty,

---

[2]The following colloquy took place at oral argument between the attorney for DNR, John Hough, and the court. The plaintiffs' attorneys were present and did not dispute any of Hough's statements.

John Hough: Well it may be a jury question whether or not the State is engaged in proprietary activities at the time or its governmental fire fighting activities at the time, but that was not a question put to the jury. *The case went to the jury on whether or not the DNR performed its obligations as a fire fighting organization.*

Justice Andersen: It did not go to the jury on the State's status as a landowner?

John Hough: There was a factual question posed to the jury as to whether or not it started on state land, *but the instructions to the jury was whether or not the DNR had a duty as to a fire fighting organization to fight this fire and whether it performed that duty in a non-negligent fashion.* The question of whether or not there was a separate landowner duty did not go to the jury, and the reason that it didn't was that before trial, the trial court ruled that that issue was not going to be an issue at trial.

Justice Andersen: Has there been a cross appeal from that ruling?

John Hough: No sir.

Justice Andersen: You're telling us at this point now, this case from the posture in which the verdict was returned based on instructions and so on—*it was not based on the State's duty as a landowner—common law and statutory?*

John Hough: That's right.

(Italics mine.)

The appellants failed to incorporate the court's instructions in the record, and we do not have the benefit of reading them, but it is clear from the trial judge's remarks and the State's attorney's statements, which are in the records, that the jury was only instructed on the Department's duty as a fire fighter protecting the general public. The jury *was not* instructed on DNR's duty to the individual plaintiffs.

but was functioning in performance of its general duty to the public. And therefore, its liability, if any, came under whether or not the public duty doctrine exceptions applied. The plaintiffs abided by such decision and did not appeal this ruling. However, *after the trial* and on a motion for n.o.v. by the State the trial judge reversed himself with the following statement:

> DNR's conduct should be governed by whether it was negligent in allocating resources and the manner in which it responded to the fire the same as any other private landowner and not necessarily whether or not the fire started on its property or elsewhere then spread across its property.

Trial judge's oral decision, at 13 (June 12, 1987).

It was too late for the trial judge to make such statements as the trial went to the jury on his original ruling that the State owed no private landowner duty, but was acting in performance of its general duty to the people of the State as a whole. The State's liability, if any, can only arise on an exception to the public duty doctrine.

ADDITIONAL FACTS

From the State's viewpoint, I believe it would be helpful to restate some of the pertinent facts.

The responsibility of fighting forest fires has been charged by the Legislature, to the Department of Natural Resources and its predecessor, the Department of Conservation and Development, since the early years of statehood. *See* RCW Title 76. DNR is responsible for fighting fires on forest lands and fires which threaten forest lands. RCW 76.04.750.[3] In total, DNR provides fire protection and suppression services on over 12 million acres of state and private forest lands.

During the summer of 1985, DNR was extremely busy protecting the forest lands from fires. The entire state was dry. Records were set for low humidities and rainfall at a

---

[3]The forest protection statutes in RCW 76.04 were amended in 1986, 1 year after the Barker Mountain fire, and a few sections in 1988 were amended. *Laws of 1986*, ch. 100. As the relevant substance of the statutes has not changed, citation is to their current version.

number of state stations. Prior to the subject fire, seven project fires caused by lightning[4] erupted throughout the state. In a typical summer, the State averages four or five project fires.

On Tuesday, August 27, 1985, DNR was engaged in fighting a project fire 15 miles northwest of Spokane called the Stoney Mountain fire. Over 200 fire fighters and 35 pump trucks were in action. That evening a lightning storm moved into northeastern Washington. Lightning strikes were spread over several counties igniting approximately 80 fires. One of these fires was the Barker Mountain fire, the subject of this case, which occurred in the Highlands District of the Northeast Area.

The Northeast Area covers all of Okanogan, Ferry, Stevens, Pend Oreille and Spokane Counties and one–half of Lincoln County. The Highlands District covers major parts of Okanogan and Ferry Counties, an area of approximately 1,200 square miles.

The first reported fire from this lightning storm was at 1:30 a.m. on Wednesday, August 28, 1985. By 6 a.m., there were 40 reported fires. By Wednesday, at midnight, there were 8 project fires and 82 confirmed smaller fires. Within a couple of days from the initial lightning storm, approximately 95 percent of the State's organized fire fighting forces or approximately 700 fire fighters were committed to fires in northeastern Washington.

Witnesses for DNR testified that DNR did not receive its first report of the Barker Mountain fire until approximately 12:15 p.m., Wednesday. Upon receiving this report, the DNR area assistant manager responded and arrived on the scene of the fire about 45 minutes later. Shortly thereafter, a helicopter arrived dropping two crew members to combat the fire; it also dropped water on the east flank of the fire. The crew people began digging a hand trail to contain the fire. A short time later, another DNR aircraft also dropped

---

[4]A project fire is one which requires that statewide resources be mobilized to handle the fire.

water on the fire. In addition, local people with shovels and a tractor joined in the effort to contain the Barker Mountain fire under the direction of the assistant manager. Around 2:30 p.m., two additional DNR crews arrived from the coast to fight the fire. A DNR tractor joined in the fight at approximately 5 p.m.

At this point, the assistant manager turned over control to the local DNR manager. The local manager continued to coordinate the fire fighting efforts on Barker Mountain. By Wednesday night, the winds had died down from the 30–mile–an–hour winds that were blowing in the afternoon. Consequently, the fire was burning lower to the ground instead of through the trees.

In part, due to concern for the manager's fatigue, the need to have fresh crews in the morning to man the different fires in the area, and the reported status of the Barker Mountain fire as calming down, the fire boss called the crews off Barker Mountain about 9 p.m., Wednesday evening.

On Thursday morning, DNR managers did a reconnaissance by helicopter of all fires and their conditions. The Barker Mountain fire was observed on this flight; it was inside the fire lines that had been constructed the night before, and the fire continued to burn close to the ground. By this time, three tractors were again working the fire, and other crews were approaching to man the fire. Based on this observation, it was concluded that the Barker Mountain fire was under control and no additional plans were made in regard to that fire. By Thursday afternoon, the winds increased to 30 m.p.h. The fire started to break out of the fire lines, and soon the fire was spreading and spotting ahead of the main body of fire, beyond control of the men and equipment at the scene. DNR fire fighters saw a 700–foot long wall of flame approximately 5 feet high coming from one end of the mountain. By 3 p.m., the fire had exploded, and fire fighters were in danger of being trapped. The decision was made to evacuate. On Thursday evening, the United States Forest Service agreed to take two–thirds

of the fire perimeter. The Barker Mountain fire burned for several more days before it was controlled.

The Barker Mountain fire burned 25,000 acres. The respondents' properties, about 5,000 acres, were burned after the fire escaped Thursday afternoon.

ANALYSIS

Three years ago the petitions for review to the Washington State Supreme Court consisted of numerous cases concerning the public duty doctrine and its reconciliation with the abolition of sovereign immunity of municipalities. It seemed that everyone that sued that had anything to do with a municipality, whether it be the State, a county or city, would end up adding such municipality as an additional defendant, which in turn literally immobilized municipalities by reason of the tremendous legal expenses involved in defending these suits. In an effort to correct the situation, the Supreme Court during July 1988, promulgated three cases to spell out the public duty doctrine of municipalities and their exceptions. They were: *Honcoop v. State,* 111 Wn.2d 182, 759 P.2d 1188 (1988) (involving a state statute); *Meaney v. Dodd,* 111 Wn.2d 174, 759 P.2d 455 (1988) (involving a municipal statute); and *Taylor v. Stevens Cy.,* 111 Wn.2d 159, 759 P.2d 447 (1988) (involving a county statute). In each of these cases, we held the government had no duty to the individual plaintiffs, but only a general duty to the public.

In *Honcoop,* we summarized the principles of the public duty doctrine as follows:

> It is axiomatic that to maintain a negligence action a duty of care running from the defendant to the plaintiff must be shown. Where the liability of a governmental entity is at issue, we have employed the "public duty doctrine" to determine whether the duty is one owed to a nebulous public or whether that duty is owed to a particular individual. The public duty doctrine provides that regulatory statutes impose a duty on public officials which is owed to the public as a whole, and that such *a statute does not impose any actionable duty that is owed to a particular individual.*

(Italics mine.) *Honcoop,* at 188.

The majority argues that the traditional rule of no liability does not apply here because of the legislative intent exception to the public duty doctrine. Under this exception, liability can be founded upon a legislative enactment if that enactment by its terms evidences a clear intent to identify and protect a "particular and circumscribed class of persons." *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978); *Baerlein v. State,* 92 Wn.2d 229, 231, 595 P.2d 930 (1979). The court looks to the purpose of the statute, as it is expressed in the act, to determine whether the Legislature intended to create a duty owed to individual members of the public. *See Halvorson v. Dahl, supra* at 677.

In *Honcoop* and *Taylor,* we found the legislative intent exception did not apply. In *Honcoop,* we rejected the plaintiffs' argument that the state brucellosis statutes evinced an intent to protect individual dairy operators. Under the brucellosis statutes, the State had a duty to *suppress* and *prevent* the spread of the dangerous disease. We found the statutes were enacted for the public welfare and not for the specified class of dairy operators, even though they are directly impacted by the regulatory statutes. Here, the statutes in question impose upon the State the duty to suppress forest fires. These statutes, as discussed below, are for the public welfare of the State, not individual plaintiffs.

In *Taylor,* the buyers of a house that did not comply with the applicable building codes sought damages from the county which issued the permit. They contended the State Building Code Act's specific reference to *"occupants or users of buildings"* evinced a legislative intent to identify and protect buyers. We disagreed. (Italics mine.) *Taylor,* at 164.

In the subject case, notwithstanding specific reference to "forest landowners", the intent of the Legislature in enacting the forest protection statutes is to protect forests in general for the public benefit, not individual plaintiff landowners. *See* RCW 76.04.165(1) ("the department's primary mission is to protect forest land and suppress forest fires");

RCW 76.04.750 ("[a]ny fire on or threatening any forest land . . . is a public nuisance by reason of its menace to life and property"); RCW 76.04.135 (adequate protection of "life, property, and the natural resources of the state").

Consistent with the Forest Protection Act, the declaration of purpose in the Forest Practices Act of 1974 provides in part:

> The legislature hereby finds and declares that the forest land resources are among the most valuable of all resources in the state; that a viable forest products industry is of prime importance to the state's economy; that it is in the public interest for public and private commercial forest lands to be managed consistent with sound policies of natural resource protection . . ..

RCW 76.09.010(1).

The majority argues that the assessment procedure, by which the fire fighting activities of DNR are partially funded, indicates the Legislature's intent to have DNR's fire fighting duties run to the forest landowners as a particular class. This is not true. As demonstrated above, the purpose of the Forest Protection Act is to protect the forest lands for the public benefit. This is further demonstrated in the first provision under the ASSESSMENTS, OBLIGATIONS, FUNDS section of the act. RCW 76.04.600 requires owners of forest land to protect the forests. If the landowners fail to provide adequate protection to the forest lands as mandated by RCW 76.04.600, DNR shall provide such protection, and such cost for providing the protection will be assessed against the landowners. However, there will be no assessment on any parcel of privately owned lands of less than 2 acres. Thus, the first responsibility for protecting the forest lands is upon the owners of forest lands. When they neglect this duty, DNR will provide the requisite fire protection, not for the benefit of the individual landowner, but for the protection of the forest lands in general. In addition, DNR responds to all fires within its jurisdiction regardless of whether or not the landowners in those cases pay assessments. Thus, the assessment procedure is merely a means of financing the fire protection program and not an

intent by the Legislature to protect a particular class of persons.

Legislative enactments for the public welfare should not be discouraged. If the State were subjected to liability under the common law rule of landowner, it would dissuade the State from carrying out its public duty to fight fires. Instead, the State would suppress any fires on its own lands before responding to neighboring forest fires. This should not be tolerated. *See Taylor v. Stevens Cy.,* 111 Wn.2d 159, 170–71, 759 P.2d 447 (1988).

The majority opinion cites no other exceptions of why the public duty doctrine should not apply. There is none. The only other exception that may apply has been foreclosed by the jury.

Under the "special relationship" exception, a duty arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff. *Taylor,* 111 Wn.2d at 166; *Meaney v. Dodd,* 111 Wn.2d 174, 178–79, 759 P.2d 455 (1988).

In the subject case, the jury found that the 24 plaintiffs did not receive any express or implied assurances from DNR. Question 31 of the verdict form reads as follows:

> Each of the plaintiffs in this lawsuit is listed below. Cross off the name of any plaintiff who *did not* receive through direct contact with DNR' agents [*sic*] or employees express or implied assurances of protection from the DNR during the fire. [All names were crossed off.]

(Italics mine.) Clerk's Papers, at 242. The jury's verdict has eliminated liability based on the special relationship exception which requires direct assurances.

### ISSUE OF DNR DUTY AS LANDOWNER NEVER SUBMITTED TO THE JURY

As discussed earlier, the liability of the State as a *landowner* was never presented to the jury. Thus, the majority cannot assume "that there was sufficient evidence that

DNR was negligent *in allowing the escape of fire from its land."* (Italics mine.) Majority, at 280. The evidence demonstrates that DNR was being charged with negligence as a public fireman, not as a landowner. Respondents introduced evidence attempting to show that DNR fire fighting procedures, in the subject fire, were substandard and defective. The categories of negligence charged against DNR included: (1) failure to use aerial reconnaissance after a lightning storm; (2) failure to attack the fire aggressively and continuously; (3) failure to prioritize the numerous lightning–caused fires; (4) failure to effectively use available resources to extinguish the fire; and (5) general overall failure of DNR management in fighting the fire.

The actions or alleged lack of actions that are at issue concern DNR's judgment in responding and fighting the Barker Mountain fire in its public fire fighting capacity. Thus, the facts of this case preclude the majority from assuming the jury found DNR negligent as a landowner. Instead, the only thing that the majority can assume is that the jury found DNR negligent in carrying out its statutory mandate to suppress forest fires. Under the public duty doctrine, DNR owes no individual actionable duty to plaintiffs and therefore as a matter of law is not negligent as to individual plaintiffs.

INTERVENING WINDS PRECLUDE LIABILITY

Assuming, however, that the jury found that DNR had a duty as a landowner and breached this duty, it does not follow that the plaintiffs can prevail. This is because the uncontroverted evidence in this case leads to but one conclusion: the proximate cause of plaintiffs' losses was the intervening sudden violence of 30–mile–per–hour winds (act of God), without which they would not have occurred. This was a superseding cause which, by its intervention, prevents the State from being liable. Restatement (Second) of Torts § 440 (1965).

Two older Washington cases have held that a strong wind, which arises while a fire is in progress and carries it

from the land where it is burning to where it would not otherwise have spread, is an intervening cause relieving the party responsible for the original setting of the fire from liability. *Stephens v. Mutual Lumber Co.*, 103 Wash. 1, 173 P. 1031 (1918); *Lehman v. Maryott & Spencer Logging Co.*, 108 Wash. 319, 184 P. 323 (1919).

In *Stephens,* it was alleged that the appellant negligently permitted the fire to escape from his lands. Appellant was engaged in logging operations when sparks flew off his engine and ignited a fire. When the fire started, there was a light wind from the north blowing the fire away from the camp. Suddenly, the wind changed from the north to the south. The fire began to spread rapidly and "jumped" 1,000 feet over the previously burned area. Soon thereafter, the logging camp was destroyed. The court held there can be no liability in the absence of any evidence of negligence in allowing the fire to spread from the immediate vicinity of the engine, especially where there would have been no loss if the wind had not suddenly changed and jumped the fire to plaintiff's property. The court explained:

> the law . . . will [not] charge one with negligence who fails to put out a fire which is not threatening, when such fire, by reason of some new cause, lodges on the property of another or goes beyond the control of the person who set it out.

*Stephens,* at 7.

Similarly, in *Lehman v. Maryott & Spencer Logging Co.*, 108 Wash. 319, 184 P. 323 (1919), there was a "gale of wind" blowing. The court held:

> A strong wind which arises while a fire is in progress and carries it where it would not otherwise have spread is an intervening cause which will relieve the party responsible for the original fire from liability for loss.

*Lehman,* at 323–24.

The Montana Supreme Court very recently found the State not liable for combating forest fires which resulted in damage to plaintiffs' properties because of intervening winds. In *Jacobsen v. State,* 236 Mont. 91, 769 P.2d 694 (1989), homeowners brought an action against the State alleging negligence in combating forest fires. The court held

that intervening forces of nature—sudden strong winds—were the cause of the fire that resulted in plaintiffs' losses.

The Barker Mountain fire started sometime Wednesday. By Wednesday afternoon, DNR crews arrived to combat the fire. By Wednesday night, the fire had calmed down. On Thursday morning, the fire was still inside the fire lines that had been constructed the night before, and the fire continued to burn close to the ground. On Thursday afternoon, crews were working on the fire when the wind suddenly increased to 30 m.p.h. It was when the winds dramatically picked up to 30 miles per hour that the fire started to break out of the fire lines. Soon thereafter, the fire began spreading and jumping ahead of the main body of the fire. By 3 p.m., the fire exploded. Plaintiffs' properties were damaged sometime after the fire exploded on Thursday afternoon.

Before the winds flared up on Thursday afternoon, DNR had the fire contained within the fire lines it had constructed the previous day. The crews were diligently working on a controlled fire when the intervening winds caused the fire to jump beyond the fire lines. Only after the winds fueled the fire into an explosion did the plaintiffs' properties suffer damage. As in the above cited cases, there can be no liability for failure to put out a fire which is not threatening, when such fire because of sudden intervening winds jumps to plaintiffs' properties. This intervening act of God was the proximate cause of plaintiffs' damages, and DNR was not guilty of negligence nor the proximate cause of plaintiffs' damages.

## COMMON LAW DUTY AS A LANDOWNER

Respondent landowners contend that it has long been the common law in Washington that each landowner owes his neighbors a duty to use all reasonable efforts toward preventing the spread of fires on his property.

Respondents rely heavily on *Arnhold v. United States,* 166 F. Supp. 373 (W.D. Wash. 1958), *vacated,* 284 F.2d 326 (9th Cir. 1960), *cert. denied,* 368 U.S. 876 (1961), to

support their contention that the State has a duty as a landowner and that such a duty provides a separate basis for liability in this case. However, their reliance on *Arnhold* is misplaced under the circumstances of this case.

In *Arnhold,* the United States assumed responsibility, for providing fire protection of the timberlands within a protected area, from the State of Washington. The court found that the United States was the owner of considerable lands within this protection area and *assumed the fire protection duty as a landowner,* rather than merely as a public fire protection agency. *Arnhold,* 166 F. Supp. at 386. Consequently, the court did not address the duties and liabilities of the government where it acts solely in its capacity as a public fireman. Nor did it discuss the public duty doctrine or the public policies relevant to holding a public fireman liable for the performance of its duties.

The court in *Arnhold* recognized that there may be no duties or liability attending the performance of public fire fighting. Indeed, as the early case law in other jurisdictions reflects, public policy reasons foreclosed the liability of such fire fighting agencies. *See State ex rel. Kern v. Arnold,* 100 Mont. 346, 49 P.2d 976 (1935); *Long v. Birmingham,* 161 Ala. 427, 49 So. 881 (1909); *Wilcox v. Chicago,* 107 Ill. 334 (1883); *Brinkmeyer v. Evansville,* 29 Ind. 187 (1867).

On the ground of public policy, it was stated in *Wilcox v. Chicago, supra:*

> If liable for neglect in this case, the city must be held liable for every neglect of that department, and every employe[e] connected with it, when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employe[e]s had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property

within the limits of its jurisdiction. It would assuredly become too [burdensome] to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. When the excitement is over and calm reason assumes its sway, it may appear to many where other methods could have been adopted to stay destruction, that appear plausible as theories, and their utter fallacy can not be demonstrated by any actual test. To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, [burdens] than are suffered from the damages from fire. Sound public policy would forbid it, if it was not prohibited by authority.

*Wilcox,* at 339–40.

In the present case, the evidence demonstrates that DNR was being charged with negligence and that it acted solely in its capacity as a public fireman, and not as a landowner.

CONCLUSION

DNR never admitted negligence on the facts of this case. Without a duty owed to the individual plaintiffs, DNR cannot be negligent. Under the public duty doctrine, DNR, when it is carrying out its statutory mandate to combat forest fires for the public welfare, owes a duty only to the general public, not to the individual plaintiffs. Because the Legislature did not intend to protect individual landowners, and because the jury found in written interrogatories that DNR gave no assurances to the landowners on which they relied, no exceptions to the public duty doctrine apply.

The question of whether or not there was a separate landowner duty did not go to the jury. The only issue that went to the jury was whether or not DNR had a duty as a fire fighting organization to suppress the fire. Report of Proceedings, at 4 (Apr. 7, 1987). Because this duty is owed only to the public, the jury's verdict of negligence that would support the individual plaintiffs' judgments is wrong as a matter of law.

Even if the jury had been instructed on the State's alleged landowner duties, the public duty doctrine applied, and the State owed no duty to the individual plaintiffs, but

only a general duty to the public. As DNR owed no individual duty to plaintiffs, DNR is insulated from negligence to plaintiffs as a matter of law.

An additional reason for setting aside plaintiffs' judgments is that there was an intervening act of God. After the Barker Mountain fire had been contained, a 30–mile–per–hour windstorm intervened causing an explosion which drove the fire fighters off the property. The fire then escaped and burned plaintiffs' properties causing great damages. Plaintiffs' damages were proximately caused by an intervening act of God, not the negligence of the Department of Natural Resources.

I would reverse.