**FILED**
**MARCH 17, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID SCHULZ, JOHN ALEXIOS, WAYNE BINKLEY, and DAGMAR DEVERE et al.,† | ) ) ) ) | No. 36453-4-III (consolidated with No. 36454-2-III, No. 36455-1-III, |
| Appellants, | ) ) | No. 36456-9-III, No. 36457-7-III) |
| v. | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | |

SIDDOWAY, J. — The Washington State Department of Natural Resources (DNR) serves the state in two capacities. In its proprietary role, DNR manages millions of acres of state trust land, state-owned aquatic lands and natural areas that protect native ecosystems. Its regulatory role involves forest practices, surface mining, and suppressing forest fires on public and private forestland. In its firefighting role, it is charged with

---

† See Appendix for a list of all Appellants.

protecting over 13 million acres of private and public forestlands, making it

"Washington's largest 'on call' wildland fire department."  Clerk's Papers (CP) at 198.

In *Oberg v. Department of Natural Resources*, 114 Wn.2d 278, 787 P.2d 918

(1990), our Supreme Court affirmed a $2.6 million jury verdict against the State for what

a jury determined was DNR's negligence *as a landowner* in allocating resources and

responding to dozens of lightning-caused fires.  Deciding legal issues that it characterized

as "very narrow indeed," the court held that the public duty doctrine did not apply,

finding legislative intent in chapter 76.04 RCW to identify forestland owners as a class to

whom DNR owed multiple duties.  *Oberg*, 114 Wn.2d at 281.  It added, however,

"Perhaps it would be wise and prudent to separate clearly the duties of DNR as a

landowner and as a firefighter."  *Id*. at 285.  The legislature responded with a new section

RCW 76.04.016, which recognizes DNR's fire prevention and suppression duties as

duties owed to the public in general.

At issue is whether claims for relief that the plaintiffs predicate on an alleged

breach of DNR's duties as a landowner, but that in fact depend on duties DNR owes only

in its capacity as a fire suppression agency, can survive summary judgment, particularly

following enactment of RCW 76.04.016.  We hold they cannot.  We affirm the summary

judgment dismissal of the plaintiffs' complaints.

2

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

FACTS AND PROCEDURAL BACKGROUND

In 2014, after an abnormally dry spring, central Washington experienced drought and a prolonged heat wave. In early July, the North Cascade Smoke Jumper Base reported fire danger in the 90th to exceeding the 97th percentile. At 5:50 a.m. on the morning of Monday, July 14, the National Weather Service issued a red flag warning for central Washington. It stated that thunderstorms would develop over most of the forecast area that would initially be dry, although they should be increasingly wet by late afternoon and early evening. It stated that Tuesday and Wednesday would return to hot and dry weather. On Thursday, cooler weather with gusty winds was forecasted.

The Northeast Washington Interagency Communications Center (NEWICC) is an interagency center that provides dispatch and logistical support to wildland fire suppression forces on lands in the northeast corner of Washington State protected by DNR, the federal Bureau of Land Management, the United States Forest Service, and the United States Department of Fish and Wildlife. NEWICC receives reports of wildland fires either directly or through 911 call centers. It broadcasts the reports to fire suppression ground resources in the applicable area, requests estimated time of arrival, and dispatches the closest available engines to respond.

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

Beginning shortly after noon on July 14, NEWICC received reports for each of four fires in south Okanogan County that eventually merged to form the Carlton Complex fire. The first report, at 12:38 p.m., was of the Stokes Road fire, followed by a report of the Golden Hike fire at 1:00 p.m. and a report of the Cougar Flats fire at 3:39 p.m. The French Creek fire was reported as a separate ignition on July 15. Between July 13 and 16, NEWICC and its constituent agencies responded to 81 incidents, including 41 wildland fires (including the four Carlton Complex fires) and 36 smoke checks. A total of 74 wildland fires were reported to have started in Washington and Oregon on July 14 alone; that, in addition to 12 large, ongoing fires that were still uncontained at the time. When the Carlton Complex fire was finally extinguished, it had burned over 250,000 acres—at the time, the largest wildfire in state history.

In November 2015, the first of five lawsuits was brought against DNR by landowners seeking to recover for property damage caused by the Carlton Complex fire. Collectively, the lawsuits include over 300 plaintiffs (the Plaintiffs). The Plaintiffs do not contend that DNR started the fires; instead, they allege that DNR was negligent in its efforts to suppress the fires, with the result that the fires spread from DNR-managed lands to neighboring properties. All of the complaints allege common law negligence

4

and violations of statutory duties set forth in chapter 76.04 RCW. The five actions were consolidated in July 2018.

DNR thereafter moved for summary judgment dismissal of the complaints. For purposes of the motion only, it conceded that the fires started on DNR-managed land. It argued that "[n]egligent firefighting claims have long been legally untenable under the 'public duty doctrine'" and that the legislature's 1993 enactment of RCW 76.04.016 "statutorily brought negligent firefighting . . . squarely into the public duty doctrine." CP at 24. It asserted that "[a]ll of plaintiffs' claims arise from allegations that DNR was negligent in its efforts to suppress the wildfires that formed the Carlton Complex." *Id.* It pointed out that the Plaintiffs "couch" their claims as arising from "DNR's duty as an owner of forestland to prevent wildfires from spreading from its own land." CP at 30. "Regardless" of that characterization, however, DNR argued

> it is clear that plaintiffs are, in fact, seeking recovery from DNR based upon DNR's role as a wildfire fire suppression agency. This is evident by the description of the factual basis for the claims. Plaintiffs allege DNR was negligent in "responding" to the fires. They allege delay in responding to the fires, negligence in fire suppression efforts and negligent failure to properly deploy resources. All these acts of negligence in fire suppression by DNR, it is alleged, caused the fires to spread from DNR lands to neighboring lands and cause damage to plaintiffs.

CP at 31 (citations omitted).

DNR's supporting materials included evidence that DNR's separate and distinct proprietary and fire suppression capacities "are subject to different legal requirements and are separately funded." CP at 198. They pointed out that in its proprietary capacity, even DNR pays forest protection assessments to fund DNR's firefighting.

In response and opposition, the Plaintiffs argued that DNR's motion presented a narrow issue of whether and to what extent the enactment of RCW 76.04.016 abrogated what they characterized as the holdings of *Oberg*. CP at 220. They argued that RCW 76.04.016 only abrogated a "special duty" *Oberg* had found owed by DNR to forest landowners who pay fire protection assessments. CP at 221. They contended it "expressly maintained DNR's long-standing duties and liabilities 'as a landowner.'" *Id.*

As for DNR's contention that the Plaintiffs were seeking to recover for what are inherently *fire suppression agency* acts or omissions, not *landowner* acts or omissions, the Plaintiffs recognized no difference. They contended that if they could prove that the fire spread from land owned and controlled by DNR, DNR's landowner duty would be "concomitant," which they equated to "identical" to DNR's fire suppression duty. CP at 242. In other words, if the landowner a plaintiff sues for negligently starting or permitting the spread of fire happens to be the State's largest on-call wildland fire

6

department, then the "landowner duty" owed by the defendant *is* the duty of the State's

largest on-call wildland fire department—and no public duty doctrine applies.

In reply, DNR pointed out the duties that the Plaintiff claimed were breached,

which DNR argued were not landowner duties. *See* CP at 416-18. They summarized:

> Land ownership does not bring with it a duty to strategically preposition
> heavy firefighting equipment gathered from around the State or requested
> from other government agencies under interagency cooperation agreements.
> Landowners do not dispatch air-attack resources. They do not set up
> interstate Type 2 Incident Management Teams. They do not prepare
> official Incident Action Plans replete with detailed fire-attack instructions
> and lists of available state-wide firefighting resources. Smokejumpers do
> not radio them for permission to investigate potential new fires. These are
> the activities of firefighting agencies, plain and simple.

CP at 418.

After hearing argument (and receiving supplemental submissions on an issue we

decline to address[1]) the trial court granted DNR's motion in a memorandum opinion. It

stated that while there was a question about whether DNR raised the public duty doctrine

---

[1] At oral argument of the summary judgment motion, DNR pointed out that RCW 76.04.760, which was enacted in 2014, provides a statutory cause of action for property damage to forested lands, including real and personal property on those lands, when the damage results from a fire that started on or spread from public or private forested lands. Moreover, it states that it provides "the exclusive cause of action" for such a claim. RCW 76.04.760(4). Both the Plaintiffs and DNR ask that we not address the statute, which was not the basis for DNR's summary judgment motion. We agree that the issue cannot fairly be addressed on this record.

as excusing only its duty as a fire suppression agency, the court had concluded that DNR "has no statutory or common law actionable duty to any of the plaintiffs, either in fire suppression responsibilities or as a land owner." CP at 450. In the court's view, "[T]here is no longer a statutory or common law duty to the individual [landowners] . . . whether as a landowner or in fire suppression efforts." *Id.*

A motion by the plaintiffs for reconsideration was denied. They appeal.

ANALYSIS

We begin by stating the issues on appeal, which are whether claims for relief that the Plaintiffs predicate on an alleged breach of DNR's duties as a landowner, but that in fact depend on duties DNR owes only in its capacity as a fire suppression agency, can survive summary judgment, particularly following enactment of RCW 76.04.016.

In responding to the appeal, DNR does not embrace the trial court's conclusion that it owes *no* statutory or common law duty to other land owners. It argues only that "RCW 76.04.016 applies whenever [it] is acting in its fire suppression capacity, regardless of whether on private or public land, including land managed by DNR in its proprietary capacity." Resp't's Br. at 2.

The Plaintiffs argue that the trial court erred in dismissing their claims because RCW 76.04.016 leaves in place DNR's statutory and common law duties as a landowner.

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

Implicitly, they argue that when the landowner is DNR, its landowner duty is the same as its duty as a fire prevention and suppression agency.

Standard of Review

We review orders granting summary judgment de novo, engaging in the same inquiry as the trial court. *Volk v. DeMeerleer*, 187 Wn.2d 241, 254, 386 P.3d 254 (2016). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). We view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Volk*, 187 Wn.2d at 254. Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

Statutory interpretation is a question of law, as, in a negligence action, is the threshold determination of whether an actionable duty is owed by the defendant to the plaintiff. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 80, 90, 392 P.3d 1025 (2017) (statutory interpretation); *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012) (determining duty in a negligence action).

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

*Oberg v. Department of Natural Resources*

We begin our analysis with the Supreme Court's decision in *Oberg*, in which a failure to isolate issues in the trial court made for difficult review. The plaintiffs' claims for relief were like those here: they sought to recover for property losses on the basis that DNR, which was fighting dozens of fires at the same time, was negligent in allocating resources and responding. They alleged a causal connection between their losses and the lightning-caused Barker Mountain fire, which started on State land.

The theory of liability tried to the jury was not clear. Jury instructions were not a part of the record. 114 Wn.2d at 280. According to a vigorous dissent by Justice Dore, the plaintiffs originally pleaded a theory of landowner liability but the court granted summary judgment to DNR that the State owed no individual duty to private landowners. *Id.* at 290-91, (Dore, J., dissenting). It allowed the plaintiffs to proceed with a claim that DNR could be liable as a firefighting agency if an exception to the public duty doctrine applied. *Id.* at 290-92 (Dore, J., dissenting). According to Justice Dore, the trial court changed its position after the jury found negligence and DNR moved for judgment notwithstanding the verdict; at that point, the trial court said that DNR's conduct should be governed "'the same as any other private landowner.'" *Id.* at 292 (Dore, J., dissenting).

10

The majority proceeded on the basis that DNR had been found liable as a landowner. It made what it acknowledged was the "critical assumption" that the jury had been correctly instructed that it was DNR's landowner duty that existed and was breached. *Id.* at 280. Because of DNR's limited assignments of error, the only argument of DNR that the court considered (and rejected) was an argument that when DNR responds to multiple fires at the same time as it responds to a fire on its own land, its duties as a landowner are "'subsumed'" into its firefighting duties. *Id.* at 280-81.

The court found DNR to have statutory duties of reasonable care as a landowner under RCW 76.04.600 and .730. "Forestland owner," "owner of forestland," "landowner," and "owner," are all defined terms in chapter 76.04 RCW, meaning "the owner or the person in possession of any public or private forestland." RCW 76.04.005(12). RCW 76.40.600 provides:

> Every owner of forestland in the state of Washington shall furnish or provide, during the season of the year when there is danger of forest fires, adequate protection *against the spread of fire thereon or therefrom* which shall meet with the approval of the department,

(Emphasis added.) RCW 76.04.730 provides:

> It is unlawful for any person to negligently allow fire originating on the person's own property *to spread* to the property of another.

11

(Emphasis added.)  The court held that according to the unchallenged jury answers, DNR breached those statutory duties.

The court further held that since DNR admitted that a landowner in Washington has a common law duty to use due care in preventing the spread of fire and did not challenge the jury's finding of negligence, DNR breached that duty as well.  *Oberg*, 114 Wn.2d at 283.

Having determined that DNR had statutory and common law duties as a landowner, the court then turned to whether the public duty doctrine precluded liability. The fundamental inquiry in applying the doctrine, it said, is "whether the governmental unit owed a duty to this particular plaintiff as contrasted to a duty owed to the public in general."  *Id.* at 284.

The court noted that one situation in which such a duty is found to be owed is "where a legislative enactment evidences an intent to identify a particular and circumscribed class of persons."  *Id.* (citing *Halvorson v. Dahl*, 89 Wn.2d 673, 676-77, 574 P.2d 1190 (1978)).  It held that provisions of chapter 76.04 RCW evidenced an intent to identify "forest landowners" as a class to whom multiple duties are owed by DNR, pointing to the facts that the chapter imposes different duties on DNR as landowner and

as a fire fighting agency, its purpose is to prevent the spread of fire to the property of another, and forest landowners pay assessments for DNR's protection. *Id.* at 285-86.

Significantly, the court "emphasize[d] the narrowness" of its holding that DNR could not assert the public duty doctrine, "because of the peculiar state of this record and the unique, dual, specific duties statutorily placed on DNR." *Id.* at 284. Even more significantly (given later action by the legislature) the court said, "Perhaps it would be wise and prudent to separate clearly the duties of DNR as a landowner and as a fire fighter." *Id.* at 285.

### Landowner Liability

As recognized in *Oberg* and as DNR concedes, DNR, like others, has statutory and common law duties as a forest landowner. In *Oberg*, whether the jury was properly instructed about those duties or whether the plaintiffs' evidence was sufficient was not before the court (something it repeatedly emphasized) because error was not assigned to those matters. Here, the nature, measure, and scope of a landowner duty *is* at issue, as is whether these Plaintiffs responded to DNR's motion with evidence sufficient to survive summary judgment.

Whether a party owes a duty of care "implicates three main issues—the existence of a duty, the measure of that duty, and the scope of that duty." *Centurion Prop. III, LLC*

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

*v. Chi. Title Ins. Co.*, 186 Wn.2d 58, 64, 375 P.3d 651 (2016) (citing *Affil. FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010)). "'In a negligence action, in determining whether a duty is owed to the plaintiff, a court must not only decide who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed.'" *Id.* at 65 (quoting *Keller v. City of Spokane*, 146 Wn.2d 237, 243, 44 P.3d 845 (2002).

If a fire starts on the land of an owner, and the owner knows of the fire and knows that, if not controlled, it will spread and destroy valuable property of his neighbor, the common law recognizes a duty to use reasonable care to prevent this result. *Sandberg v. Cavanaugh Timber Co.*, 95 Wash. 556, 561, 164 P. 200 (1917). The general duty of landowners to prevent the spread of fire from their lands is to exercise "reasonable effort" and "ordinary prudence" once they know of the existence of fire on their land. *Stephens v. Mut. Lumber Co.*, 103 Wash. 1, 5-6, 173 P. 1031 (1918). The Supreme Court stated in *Stephens* "as a matter of law" that "the owner is not to be charged with a keener judgment and prevision than those who complain of its negligence." *Id.* at 5.

Similarly, RCW 76.04.600 and .730 impose on a landowner the duty to use due care to prevent the spread of fire from its land.

DNR supported its motion for summary judgment with evidence that DNR was not conducting any activities on its land when the fires at issue in this case started. It presented evidence that the fires were first spotted by fire lookouts, firefighters and others, who reported them directly to the NEWICC dispatch center. Plaintiffs do not controvert this evidence. Even if the Plaintiffs could show that DNR was present when fire started on its land or otherwise became aware that something on its land was burning, they would have to demonstrate that DNR failed to use due care to prevent the spread of that fire to neighboring land.

Having thoroughly examined the Plaintiffs' response to DNR's motion for summary judgment, we find no evidence of a breach of this landowner duty. Instead, we find only allegations that DNR committed negligence in protecting or suppressing fire in the forest protection zones for which it is responsible as a fire suppression agency. This does not present a genuine issue of fact of *landowner* liability.

Contrary to the Plaintiffs' position, *Oberg* does not suggest that DNR's duty as a landowner is identical to its duty as a fire suppression agency. To the contrary; it points to DNR's duties as a fire suppression agency that are imposed by RCW 76.04.610 (DNR "shall provide . . . protection" within forest protection zones) and .750 (imposing a duty on DNR to "summarily suppress" fires threatening forestland within a forest protection

15

zone). *Oberg*, 114 Wn.2d at 285. It recognizes that DNR's statutory and common law duty as a landowner, by contrast, is to use due care to prevent the spread of fire from its land. *Id*. at 282-83. The court refers to DNR's duties as a landowner as "'concomitant,'" *id*. at 285, but "concomitant" does not mean identical, it means associated.[2]

Plaintiffs' complaints seek to recover for landowner liability. Because they are unable to present evidence of DNR's breach of a landowner duty, summary judgment was appropriate.

RCW 76.04.016 and the Public Duty Doctrine

"When the defendant in a negligence action is a governmental entity, the public duty doctrine provides that a plaintiff must show the duty breached was owed to him or her in particular, and was not the breach of an obligation owed to the public in general." *Munich*, 175 Wn.2d at 878. The public duty doctrine generally applies to governmental functions, but not to proprietary ones. *Sunshine Heifers, LLC v. Dep't of Agr.*, 188 Wn. App. 960, 967, 355 P.3d 1204 (2015). "Consequently, where a public entity acts in a dual capacity, application of the public duty doctrine depends on the particular function

---

[2] Concomitant is defined as "accompanying or attending esp. in a subordinate way **:** occurring along with or at the same time." WEBSTER'S NEW INTERNATIONAL DICTIONARY 471 (3d ed. 1993).

16

being challenged." *Stiefel v. City of Kent*, 132 Wn. App. 523, 530, 132 P.3d 1111 (2006).

"The principal test in distinguishing governmental functions from proprietary functions is

whether the act performed is for the common good of all, or whether it is for the special

benefit or profit of the corporate entity." *Okeson v. City of Seattle*, 150 Wn.2d 540, 550,

78 P.3d 1279 (2003).

In finding that the public duty doctrine did not apply to the claims against DNR in

*Oberg*, the court relied on only one of the four exceptions to the doctrine: the legislative

intent exception.[3] It suggested it would be "wise and prudent" for the legislature to

separate clearly the duties of DNR as a landowner and as a fire fighter. 114 Wn.2d at

285. The legislature went a step further: it eliminated any basis for the legislative intent

exception by expressly providing that the public duty doctrine applies when DNR acts in

its capacity as a fire prevention and suppression agency.

As observed by the Supreme Court in *Hale v. Wellpinit Sch. Dist. No. 49*, 165

Wn.2d 494, 509, 198 P.3d 1021 (2009), "Determining the collective intent of the

legislature is not always an easy task" and "[o]ccasionally, try as the court may, the

---

[3] Three other exceptions to the public duty doctrine are failure to enforce, the rescue doctrine, and a special relationship. *Munich*, 175 Wn.2d at 879. As Justice Dore pointed out in his dissent in *Oberg*, whether DNR stood in a special relationship was submitted to the jury, which found that it did not stand in a special relationship to any of the 24 plaintiffs. 114 Wn.2d at 298.

17

legislature is disappointed with the court's interpretation." In passing legislation to correct the occasional judicial misstep, "the legislature act[s] wholly within its sphere of authority to make policy, to pass laws, and to amend laws already in effect." *Id.*

RCW 76.04.016, which addresses DNR as "the department," provides:

The department when acting, in good faith, in its statutory capacity as a fire prevention and suppression agency, is carrying out duties owed to the public in general and not to any individual person or class of persons separate and apart from the public. Nothing contained in this title, including but not limited to any provision dealing with payment or collection of forest protection or fire suppression assessments, may be construed to evidence a legislative intent that the duty to prevent and suppress forest fires is owed to any individual person or class of persons separate and apart from the public in general. This section does not alter the department's duties and responsibilities as a landowner.

Not only does the provision bring DNR's firefighting capacity clearly within the public duty doctrine, it evinces the legislature's view that DNR *does* act in different capacities, in which it has different duties.

By the new provision's plain language, the public duty doctrine applies to DNR "when acting, in good faith, in its statutory capacity as a fire prevention and suppression agency." A plaintiff cannot avoid that result by alleging that such action was taken in DNR's capacity as a landowner.

18

No. 36453-4-III (consol. w/ Nos. 36454-2-III; 36455-1-III; 36456-9-III; 36457-7-III)
*Schulz v. Dep't of Nat. Res.*

RCW 76.04.016 does not alter DNR's duties and responsibilities as a landowner to use due care to prevent the spread of fire from its land. But no evidence of landowner liability was presented by the Plaintiffs.

The summary judgment dismissal of Plaintiffs' claims is affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, C.J.

19

APPENDIX

LIST OF ALL APPELLANTS

JOHN ALEXIOS; JOSH ALLEN; MARJORY ALLEN; FRANK ALMQUIST; LORETTE ALPERS; CARA ANDERS; BARBARA ANDERSON; DOUGLAS ANDERSON; LIANNE ANDERSON; RONALD ANDERSON; TERRY ANDERSON; ARTHUR ARNDT; ELDRED BARKER; LEIGH ANNE BARTH; PARKER BARTH; WILLIAM BAUER; CAROL BEHRENS; JAMES BEHRENS; THAD BEYER; WAYNE BINKLEY; ROGER BOESEL; WENDELL BOGGS; PETER BOLINGER; MIKE BOWERS; PAM BOWERS; MICHAEL D. BOWLES; CHRISTI BOYD; REGINALD BOYD; ANNA BRANNON; DINA BRANNON; JERALD BRANNON; NICHOLAS BRANNON; NORMA BROOKS; ANGELA BROWN; JACOB BROWN; RICHARD A. BROWN; RUTH BROWN; JOAN BROWNLEE; PHILIP BROWNLEE; JOYCE BRUEMMER; KENNETH D. BRUEMMER; RALPH BUCHANAN; WENDY BUCHANAN; TERRY BUDISELICH; JANEL K. BURELBACH; DALE BURNISON; PATRICK BUSTAD; JASON BUTLER; SIGNE BUTLER; PATRICIA CADDEY; CECELIA CAMPBELL; DENNIS CHITTICK; GINGER CHITTICK; MARTY CLAPP; JOHN CLEES; LINDA R. CLEMENSEN; MICHAEL J. CLUNE; SARAH J. CLUNE; DEBRA COOPER; DAVID CREVELING; JUSTIN CRUMP; EVERIT CUEVAS; CARMA DANIELS; KASSIA DANIELS; LAWRENCE DANIELS; ERIC DARLING; SHANNON DARLING; DAVID DASKAM; JOAN DAVIS; MARCIA DAY; JOE DEROSA; TERRYE DEROSA; DAGMAR DEVERE; LOREN DOLGE; DOWN RIVER HOLDINGS, LLC; WENDY EDIGER; JEAN EKVALL; MERLIN EKVALL; JOHN ELLIS; MARGARET ELLIS; DAWN ERICKSON; KYLE FOREMAN; LINDA FOREMAN; BONNIE L. FULLER; CHARLES FULLER; RICHARD H. FULLER; CALVIN D. GARRISON; JAMES GASWINT; LINDA GASWINT; SUSAN E. GESSEL; BRUCE GIESS; BRIAN W. GINTER; GARRETT GINTER; LORRAINE GINTER; JOE GLANDON; ERIK GONZALEZ; RYAN W. GREENE; ROBERTO GUZMAN; ROSE GUZMAN; JANIS HAMSHAW; PARRY HAMSHAW; RENEO HANCOX; TOM HANCOX; TIMOTHY HARDING; FORREST HARRISON; LIBERTY HARRISON; KERRY HARVEY; TIM HARVEY; KATHERINE HAVEN; HARRY HIMMELHAVER; JUDY HIMMELHAVER; GARRY C. HOLDER;

ROSEMARIE J. HOLDER; KEITH W. HOLE; BRUCE HONE; SALLEY HONE; DIANE HOOD; TIMOTHY HOOD; CLARK HOOVER; DEBORAH HOOVER; SHANE HORTON; LOIS HOWELL; RICHARD HOWELL; ROSE M. HUGHES; TONY HUGHES; BRAD IRWIN; JESSICA IRWIN; ADA A. JENSEN; JOHN C. JENSEN; KORIE JOHANSEN; ROBERT JOHANSEN; DALE JOHNSON; DANIEL JOHNSON; DAVID JOHNSON; DESTINY JOHNSON; DIANA JOHNSON; GAIL LEADER JOHNSON; JENNIFER JOHNSON; JOHN JOHNSON; ROSELLA JOHNSON; KD LAINE ORCHARDS, LLC; GRACE KARTEVOLD; SUSAN G. KEEZER; WAYNE KEEZER; CANDICE K. KELLY; TREVOR KELPMAN; LINDA A. KERAN; WILLIAM G. KERAN; CATHERINE O. KIRK; JOHN H. KIRK; JAMES KLINE; DEBBIE KNAPP; STEVE KNAPP; HARRY F. KNOWLTON; PATTY KNOWLTON; HARVEY LAMBERT; DEBORAH LAUGEN; KATHLEEN A. LEWIS; ROBERT E. LEWIS; MICHELE LINDQUIST; AL LITTLEFIELD; JUDY LITTLEFIELD; PAUL LOCKEN; KATHLEEN LOWRY; MARY LOUCKS; GUY MACKEY; KATHLEEN MALTAIS; KIM MALTAIS; MICHAEL MALTAIS; CHARLES MCCARTHY; JESSICA MCCARTHY; BRAD MCGAHA; KELLEY MCGAHA; CAROLE MEAD; WILLARD MEAD; KENNETH MELTON; TONYA MELTON; DOREEN MENSING; GENE MEYERS; PAMELA MEYERS; LEWIS MILLER JR; JIM MINTZER; KATHERINE MINTZER; RANDY MOORE; DANIEL MORGAN; KERRY MORGAN; SHERI MORTIMER; GEORGIA NELSON; MARK NELSON; ANITA NESVACIL; GRANT NESVACIL; ART NORDANG; MARTIN NORDANG; CRAIG NEUNEKER; GARY OGDEN; LYNDA OLSON; REGINA OLSON; ROGER E. OLSON; WAYNE OLSON; DONALD L. OWENS; MARY E. OWENS; LOURDES OROZCO; MANUELA ORTEGA; YANELI PAMATZ-ARVEALO; JANETT PATRICK; WILLIAM PATRICK; CAROLYN PEARSON; FERNANDO PEREZ-MARTINEZ; JULIA PEREZ-MARTINEZ; JEFFREY PETERSEN; STEPHANIE PETERSEN; RICH PITKETHLY; MICHAEL D. POOLE; VICKY A. POOLE; NOEL PORTER; RUBY PORTER; CARY POSTELWAIT; JOY POSTELWAIT; TRACY M. PRICE; CYNTHIA QUISENBERRY; JOHN QUISENBERRY; BARBARA RAINS; DAVID RAINS; DONALD REDDINGTON; GINGER REDDINGTON; BRENDA RIGGAN; COREY RIGGAN; CYNTHIA RIGGAN; DANIEL RIGGAN; ROBBIE RISLEY; WILLIAM T. ROBERTS; ROCKY RIDGE ORCHARDS, INC.; CAROL ROE; KEITH ROE; KIMON ROE; KATHLEEN ROGAHN; PATRICK RYAN; MARIA SANABRIA; STEPHEN SANDBERG; SUSAN SANDBERG; SCOTT SCHULKE; DAVID SCHULZ; DEANNIS SCHULZ; JEFFEREY SCHWEITZER; MICHAEL SEE; JEANNENE SHENYER; NEIL

SHENYER; GLORIA SILVERNAIL MONTE SILVERNAIL; ROBERT SIMMON; LISA K. SKILLMAN; RANDAL T. SKILLMAN; SHARON SKIRKO; DONA SLATER; JOHN SLATER; WARREN SMETHERS; MARLENE SMITH; PHILLIP SMITH; MARIA SOLANO; PEDRO SOLANO; DEAN SORENSON; ANTONIO PEREZ SOTO; STENNES ORCHARDS, LLC; STENNES TWINS LAND, LLC; BERT STENNES; DEBROAH STENNES; KEITH STENNES; JOHN STOKKA; DAVID STONE; TONI STONE; JOANN STREET; WILLIAM TACKMAN; DARLENE TATLEY; DONALD TATLEY; TODD TAYLOR; EDWARD C. TERNEY; BRADLEY THAYER; FRANCY THAYER; CHRISTOPHER A. THIEME; ROBERT THOMAS; SURACHIT THOMAS; WILLIAM THOMAS; DAVID THOMPSON; NANCY THOMPSON; EUGENIA TOBAR; FANNIE L. TONSETH; ROBERT W. TONSETH; DAN TURNER; KEN TURNER; PATTI MOCCARDINE-TURNER; VICKI A. TURNER; JAMES UDELL; JOHN UMBERGER; TRACY VALLIANT; JOSE L. VARGAS; MARICELA VARGAS; BRIAN VARRELMAN; GREGGORY WAGG; JAYSON WAHLS; DESTINY WALSH; MATTHEW WALSH; GEORGE WEBBER; ELLEN WHAN; RORY WILLIAMS; ERVIN WOLLEY; EARL WORTHINGTON; DALE ZAHN; HELEN ZAHN; LINDA ZAHN; KEITH ZIELKE; BEVERLY ZWAR; JEFFREY ZWAR; 97 AUTO, INC. & SCHULL'S AUTO WRECKING